Blood v. Shepard.

Mrs. W. H. Blood *et al.* v. Patrick H. Shepard.

No. 13,770.   (77 Pac. 565.)

SYLLABUS BY THE COURT.

1. Pledges — *Subject to Strict Foreclosure.* The law of pledges is materially different from that of mortgages. The lien resulting from a pledge is subject to strict foreclosure; that resulting from a mortgage is not.

2. ———— *Mortgage Securing Pledge Foreclosed and Property Purchased by Pledgee — Pledgee's Title Defined.* Where a mortgage securing certain choses in action pledged for the payment of a debt is foreclosed, and the pledgee takes title and possession of the property under a sheriff's deed, the title thus vested in him becomes, by substitution, the pledge, and is subject to the law of pledges, which entitles him to a decree quieting his title upon failure of the pledgor to pay his debt within a reasonable time.

Error from Wyandotte district court; E. L. Fischer, judge. Opinion filed May 7, 1904. Affirmed.

*Reed & Reed,* and *A. I. Smith,* for plaintiffs in error; *T. E. Dewey,* of counsel.

*A. L. Berger,* and *Nathan Cree,* for defendant in error.

The opinion of the court was delivered by

Cunningham, J.: On December 3, 1895, Cassandra F. Clark borrowed of the defendant in error, Patrick H. Shepard, the sum of $2300, and gave her note therefor, due in two years after date, with interest at the rate of ten per cent. per annum from date. To secure the payment of this note certain bonds of the Rosemont Land Company, the payment of which was secured by mortgage upon real estate in Wyandotte county, Kansas, were assigned and delivered to Mr. Shepard, and the following written agreement relative thereto was made by the parties:

"This agreement, made and entered into the 3d day

of December, 1895, by and between Cassandra F. Clark, of Kansas City, Mo., party of the first part, and Patrick H. Shepard, of Kansas City, Mo., party of the second part,

"Witnesseth: The party of the first part has this day borrowed from the party of the second part the sum of twenty-three hundred ($2300) dollars for which she has given to the party of the second part her promissory note of even date herewith, payable two (2) years from its date at the Interstate National Bank of Kansas City, Kansas, with interest at ten per cent. per annum from date, payable annually; and for the purpose of securing the payment of her note, the party of the first part hereby assigns and transfers, or causes to be assigned or transferred, to the party of the second part thirty-eight (38) bonds of the Rosemont Land Company, issued by said company on the 4th day of May, 1891; twenty of the same being of the denomination of one hundred ($100) dollars each, and eighteen (18) of the same being of the denomination of five hundred ($500) dollars each; the payment of which said bonds is secured by trust deed or mortgage given by the Rosemont Land Company, the maker of said bonds, upon a tract of thirty-two (32) acres of land situated in section eight (8), township eleven (11), range twenty-five (25), Wyandotte county, Kansas, all of which said bonds were issued by said Rosemont Land Company to the Commonwealth Loan and Trust Company; and which said bonds have been indorsed and assigned by said Commonwealth Loan and Trust Company and now belong to the assignee of the People's Guaranty Savings Bank of Kansas City, Missouri, which said bonds are to be held by the party of the second part for two years, or until party of first part fails to comply with this contract, as collateral security for the payment of the note given by the party of the first part to the party of the second part.

"It is further agreed between the parties hereto that the party of the first part shall, within twenty (20) days after the date of this contract, cause to be

48—69 KAN.

instituted in the proper court in Wyandotte county, Kansas, a suit to foreclose the trust deed or mortgage above referred to, securing the payment of said bonds; that said foreclosure proceedings shall be begun and maintained in the name of the party of the second part, or his assigns; but the party of the first part, or her assigns, shall employ and pay the attorneys therein, and shall pay all costs of said proceedings; that on the termination of said foreclosure proceedings, the party of the second part, or his assigns or representatives, should he or they become the purchasers of said land under said foreclosure proceedings, shall convey to said party of the first part, her heirs or assigns, the land so purchased at said foreclosure sale, upon the payment by the party of the first part, her heirs or assigns, to the party of the second part, his heirs or assigns, the amount of the principal and interest then due on the note given by the party of the first part to the party of the second part, and when all of the other terms and conditions of this contract have been complied with by the party of the first part, her heirs or assigns.

"It is further agreed that should the party of the first part fail, neglect or refuse to pay the interest upon her said note given to the party of the second part, or fail to comply with all the terms and conditions of this contract, the party of the second part may sell, or cause to be sold, in any manner he may see fit, and with or without notice, the bonds above referred to, and which he holds as collateral security for the payment of the note given by the party of the first part to the party of the second part.

"In witness whereof, the parties hereto have set their hands and seals to duplicate hereof at Kansas City, Kansas, this 3d day of December, 1895.

PATRICK H. SHEPARD.<br>CASSANDRA F. CLARK."

Soon after the execution of this contract Mrs. Clark, in accordance therewith, caused an action to be brought in the proper court, in the name of Mr. Shepard, for the foreclosure of the mortgage against the Rosemont

Land Company, and deposited fifteen dollars as security for costs of the action. This is all she did under the terms of the contract or in payment of her note or interest thereon, unless she paid two years' interest, which is disputed. The foreclosure action proceeded to judgment, and at the sheriff's sale Shepard became the purchaser of the land and received a sheriff's deed therefor, which was dated September 19, 1899. He went into possession, paid the delinquent and current taxes, and the costs of the foreclosure suit, including attorney's fees. From the date of the sheriff's deed up to the commencement of this action February 28, 1902, Shepard was in undisputed possession of the land in question, renting, using, managing, and in all respects treating it as his own. At no time did Mrs. Clark or the plaintiffs in error, who are her heirs at law, she having died, ever offer to pay Shepard the amount due him upon his note or his expenditures.

The foregoing contract was placed on record, constituting, as Shepard thought, a cloud upon the title of the land in him. For the purpose of having this removed and having the respective rights of all parties determined, he brought this action, wherein, after setting out the facts substantially as above, he prayed

"that the court order and decree herein that, unless said amount, as claimed by the plaintiff herein, be paid within a reasonable time from the rendition of said decree herein, said contract be canceled, and for a further order declaring said contract to be null and void and of no force and effect, and that the right, title and interest, if any the defendants might have, may be forever barred."

The defendants' answer admitted the giving of the note by Mrs. Clark, the assignment of the collaterals,

the execution of the agreement, the foreclosure of the Rosemont Land Company mortgage, and the purchase of the land in question by the plaintiff at the sheriff's sale in question, but averred that the legal effect of all this was that of a mortgage; that defendants were the owners and holders of the title to the real estate; that whatever was due to Shepard upon the note and for expenditures was a lien upon the real estate; and prayed that an accounting be had, and the amount due, if any, be determined, and declared only a mortgage lien on the land; and that, upon its payment, Shepard be directed to convey the title to the defendants.

Upon these issues the court, upon evidence, found the amount due, and directed that if it should be paid to the plaintiff within ten days he should convey the premises to the defendants by a quitclaim deed, but that in case of failure to make such payment within that time, they and all persons claiming under them should be forever barred and foreclosed of any right to redeem, or right, title or interest in the land. To vacate this order the defendants below bring this proceeding in error.

The only serious claim of error is that the court took a wrong view of the character of this transaction; that it should have held that the title which Shepard was holding, acquired as it was, constituted, as between the parties, a mortgage to secure to him the amount of money due him; and that, it being a mortgage, the court could not decree, as it did, a strict foreclosure, but that it should have adjudged that amount a lien on the land and directed its sale as upon foreclosure. This presents the inquiry of the character of the transaction between Shepard and Mrs. Clark. Was it such as to create but a mortgage

upon the land in favor of Shepard, and did the subsequent purchase of the lands by Shepard under the foreclosure proceedings instituted by Mrs. Clark simply place in him a defeasable title, amounting only to a mortgage, which must be regularly foreclosed ?

It must be borne in mind that it was the bonds of the Rosemont Land Company that Mrs. Clark assigned, transferred and delivered to Shepard for the purpose of securing her note.   This transaction was a pledge of these bonds and not a mortgage upon the land, and it created the relation of pledgor and pledgee, not of mortgagor and mortgagee.   The relation that exists between pledgor and pledgee and mortgagor and mortgagee are entirely different under the law.   A pledgee must take possession of his pledge ; a mortgagee may not, in the absence of stipulations to that effect.   A pledgee may retain possession of his pledge until his debt be satisfied, and is not bound to dispose of the pledge by formal sale, even upon the maturity of his debt, but may, if he choose, have strict foreclosure of his lien by summary sale, upon advertisement.   A mortgagee, under our statute, is never entitled to strict foreclosure, but must proceed by proper suit, and await the period of redemption.   Were the transaction one involving simply the choses in action, there being no real-estate mortgage securing them, probably there would be no question of the character of the holding or the right of the pledgee ; but these bonds of the Rosemont Land Company were secured by mortgage.   That, however, was but an incident to them ; and the law is that, when a mortgage which secures choses thus held is foreclosed and the land bid in by the pledgee, it becomes, by substitution, the collateral security, taking the place of the choses which the mortgage had

secured, and, as such, is governed by the law of pledge, and not of mortgage. (*Ross v. Barker*, 58 Neb. 402, 78 N. W. 730; *Dalton v. Smith et al.*, 86 N. Y. 172; *Brown, Administrator, v. Tyler and others*, 8 Gray, 135, 69 Am. Dec. 239; Cole. Coll. Sec., 2d ed., § 183; Jones, Pledges, Coll. Sec., 2d ed., § 660.)

The land in Shepard's name occupied the same position as did the bonds prior to the foreclosure; the relation of mortgagor and mortgagee never existed between him and Mrs. Clark. A mortgage is a grant, and, as in all other grants, there must be a grantor, a grantee, and an estate to be conveyed. Mrs. Clark never had any estate in this land; therefore she could convey none by mortgage or otherwise.

Besides the questions which would arise under the law of pledges, had there been no agreement between these parties, there is the question of the relationship created by the agreement. It provided that Mrs. Clark should institute and prosecute to fruition a foreclosure suit and pay all of the expenses of the same. This certainly implied her assent to such proceeding. It provided further that, should Shepard become the purchaser of the land under such foreclosure proceedings, he should convey it to her upon the payment of the amount due. This implied Mrs. Clark's consent to his purchase of the land with the agreement that it thereby should become his, to be held absolutely by him, unless she should pay the amount found due to him within a reasonable time. Clearly this agreement did not constitute a mortgage; the most that could be claimed would be a right to redeem upon the payment of the amount due, and to receive back from Shepard the full title which he had legally acquired.

Shepard's action was one to determine the amount due him and afford the representatives of Mrs. Clark

an opportunity, by its payment, to obtain a conveyance of the land to them, and to obtain a decree that, in default of such payment, any claim that they might make, or color of claim that might arise, by reason of the record of the agreement, should be extinguished. This was clearly the extent of their right under the law, and especially so, under the agreement.

It is suggested that the period of ten days for redemption was unreasonably short. That was a matter resting within the sound discretion of the court, and we cannot say that this was abused. The answer itself set up that the defendants were ready and able to discharge the amount found due, and not much fault should be found with the court for having taken them at their word. Nor was there specific objection made to the shortness of time.

Complaint is made that the amount found by the court to be due Shepard was excessive; at least, by two years' interest on Mrs. Clark's note. Shepard's petition alleged that there was due to him the face of the note, with interest from December 3, 1897—an implication that the interest upon the note from its date to the time it fell due had been paid; however, had the allegation been specific, we do not think that Shepard would have been irrevocably bound thereby. His object was not to recover on the note, but to give opportunity for redemption of the land, if defendants should desire it. His prayer was that the amount due him be ascertained, and the defendants joined in this prayer. The court was endeavoring to ascertain the amount due. There is sufficient evidence in the record to justify the finding made by the court in this respect.

We find no error in the record, and hence affirm the judgment.

All the Justices concurring.