[Civil No. 2338.   Filed July 14, 1925.]

[237 Pac. 952.]

W. E. LEWIS and ELIZABETH LEWIS, His Wife, Appellants, v. HOWARD R. HORNBACK, Appellee.

1. MORTGAGES—MORTGAGEE CAN EITHER SUE ON NOTES OR FORECLOSE MORTGAGE, BUT HE CANNOT DO BOTH; MORTGAGED PROPERTY MUST BE EXHAUSTED TO SECURE DEFICIENCY JUDGMENT.—Under Civil Code of 1913, paragraph 4115, mortgagee can either sue mortgagor directly on notes, waiving mortgage, or he can foreclose mortgage, but he cannot do both, and, if he elects to foreclose, he must exhaust mortgaged property before he can have deficiency judgment.

---

1.  See 19 **R. C. L.** 509.

2. PLEDGES — MORTGAGEE NEED NOT TAKE OUT EXECUTION ON DEFI-
CIENCY JUDGMENT AGAINST MORTGAGOR BEFORE SUING ON COL-
LATERAL.—Where notes and mortgage were assigned to mortgagee
as collateral to secure payment of his mortgage, it is not neces-
sary for mortgagee to take out general execution against mortgagor
on deficiency judgment before proceeding to sue on notes and
mortgage given as collateral. ·

3. MORTGAGES—MORTGAGEE, WHOSE NOTES AND MORTGAGE WERE AS-
SIGNED AS COLLATERAL, CANNOT COMPROMISE DEBT AND HOLD PER-
SON ASSUMING PAYMENT OF MORTGAGE, UNLESS LAND IS INSUFFI-
CIENT TO PAY DEBT SECURED.—Where L.'s note and mortgage were
assigned by B. to T. as collateral to secure payment of mortgage
which T. held on B.'s land, it was necessary, in order to fix lia-
bility to T. as against L. personally, which liability L. would be
justified in paying or compromising, and then to hold H. on his
assumption of L.'s notes and mortgage, that both B.'s land and
land on which L.'s mortgage was given proved insufficient to sat-
isfy T.'s judgment foreclosing both mortgages, but it was not
necessary to actually sell such land when evidence shows that its
value is insufficient to satisfy T.'s mortgage.

4. MORTGAGES—MORTGAGEE, WHOSE NOTES AND MORTGAGE WERE AS-
SIGNED AS COLLATERAL, HELD ENTITLED TO COMPROMISE PLEDGEE'S
CLAIM AND THEN HOLD PERSON WHO HAD ASSUMED PAYMENT OF
MORTGAGE.—Where L.'s notes and mortgage were assigned as col-
lateral to secure payment of B.'s mortgage to T., and T. elected
to foreclose both mortgages, and mortgaged property was insuffi-
cient to satisfy T.'s mortgage, L. could compromise T.'s claim
arising under the assignment of his mortgage, and then hold per-
son who had assumed payment of L.'s notes and mortgage for
failure to carry out his agreement assuming mortgage.

See (1) 27 **Cyc.**, pp. 1515, 1753 (Anno.).    (2) 31 **Cyc.**, p. 886.
(3) 27 **Cyc.**, p. 1352.    (4) 27 **Cyc.**, p. 1350.

APPEAL from a judgment of the Superior Court
of the County of Maricopa.    Fred C. Struckmeyer,
Judge.    Judgment reversed.

Messrs. Phillips & Phillips and Messrs. Cox & Car-
son, for Appellants.

Messrs. Alexander & Christy· and Mr. Hess Sea-
man, for Appellee.

2.  Right of creditor to enforce either one of two securities, see
note in 73 **Am. St. Rep.** 567.

LOCKWOOD, J.—On June 1st, 1920, L. R. Baldwin and wife deeded to W. E. Lewis and wife, hereinafter called plaintiffs, certain real estate in Maricopa county, which will be referred to as the Laveen land. On the same day plaintiffs executed and delivered to Baldwin four notes aggregating $6,500, secured by a purchase price mortgage on the land. June 2nd, 1920, and after the deed to plaintiffs, Baldwin mortgaged the premises to Niels Peterson for $4,000. By July 23rd, 1921, plaintiffs had reduced their indebtedness on the Baldwin notes to $4,000, and on that date they deeded the land to Howard R. Hornback, hereinafter called defendant. The deed recited the two mortgages above referred to, and that defendant agreed to assume and pay them. November 15th, 1921, defendant and wife deeded the premises back to Baldwin; the deed describing the two mortgages above referred to, and stating that Baldwin had assumed them as part of the purchase price.

Baldwin was also the owner of certain other real estate which we will call the Baldwin land, and on February 2nd, 1920, he had given a first mortgage thereon to the Bartlett-Heard Land & Cattle Company for some $7,400. On the same day he gave a second mortgage thereon to one George Traub for $6,600. May 6th, 1921, in consideration of an extension of time on the Traub mortgage, Baldwin assigned the notes and mortgage given him by Lewis on the Laveen land to Traub as collateral security for the $6,600 mortgage given by him to Traub on the Baldwin land. In November, 1922, Traub commenced suit against Baldwin to foreclose the mortgage on the Baldwin land, and in the same action sought to foreclose the mortgage on the Laveen land, given by Lewis to Baldwin, and assigned by the latter to Traub as collateral security for the mortgage on the Baldwin land.

Traub made Baldwin and Lewis and their wives parties to the action, but did not join Hornback. Thereafter Traub and the Baldwins and Lewises entered into a tripartite agreement, whereby Traub granted the Baldwins an extension of time on the mortgage on the Baldwin land, and in consideration of a payment of $1,000 by the Lewises to him satisfied the notes and the mortgage given by Lewis on the Laveen land; the same being the ones which Hornback had assumed when he bought from Lewis, and which Baldwin had agreed to pay and assume when he took the deed back from Hornback. At the time of this settlement Lewis knew Hornback had deeded the Laveen land back to Baldwin, and that the latter had accepted it in satisfaction of the debt on the Lewis notes and mortgage. In pursuance of this agreement, on the motion of Traub, the suit to foreclose was dismissed. Thereafter plaintiffs filed their complaint in this suit, setting up the making and the execution of their notes and the mortgage on the Laveen land in favor of Baldwin; the assumption thereof by defendant; the assignment by Baldwin to Traub; and that Traub being authorized thereto by the mortgage had commenced his foreclosure thereof. They next alleged that the Laveen land was only worth $4,000, while the total indebtedness thereon amounted to $9,000, leaving a personal liability of theirs on the notes by way of deficit of $5,000; and that they had demanded of defendant that he take care of the indebtedness as he had agreed, but that he had not done so, so that in order to minimize their damages caused by his failure they had settled the indebtedness and mortgage for $1,000. They also set up an attorney's fee incurred in the settlement of $150, and in this suit asked damages for $1,150 from Hornback for breach of his agreement to assume and pay the notes and mortgages aforesaid.

The case was tried to the court without a jury, and judgment was rendered for defendant. After the usual motion for a new trial was made and denied, plaintiffs appealed to this court.

It will be seen by the foregoing statement of facts that the primary creditor, so far as this case is concerned, was Traub, and the primary debtor was Baldwin. The latter owed the former upon certain notes $6,600 which were originally secured only by a mortgage on the Baldwin land. As to this debt Traub could either sue Baldwin directly on the notes, waiving the mortgage, or he could sue to foreclose the mortgage, but he could not do both. Paragraph 4115, R. S. A. 1913 (Civ. Code). If he elected the foreclosure action, he must exhaust the mortgaged property before he could have a deficiency judgment fixed against Baldwin. *Johns* v. *Wilson*, 6 Ariz. 125, 53 Pac. 583; Id., 180 U. S. 440, 45 L. Ed. 613, 21 Sup. Ct. Rep. 445, (see, also, Rose's U. S. Notes); *Kastner* v. *Fashion Livery Co.*, 10 Ariz. 23, 85 Pac. 120; paragraphs 4117 and 4119, R. S. A. 1913 (Civ. Code). In addition to his mortgage security, however, Traub held as collateral security for the Baldwin notes on mortgage the Lewis notes and mortgage on the Laveen land. If the Baldwin land did not bring the amount of the mortgage, Traub could then proceed to collect his deficiency judgment.

Would it then be necessary for him, as contended by defendant, to take out a general execution against Baldwin on the deficiency judgment? We think not, for the Lewis notes and mortgage on the Laveen land were assigned to him as collateral security, and, having exhausted his remedy against the Baldwin lands, he would have a right, the debt of Baldwin in excess of the value of those lands having become fixed as a deficiency judgment, to proceed to collect on his other security. *Blood* v. *Shepard*, 69 Kan. 752, 77 Pac. 565; *Third Nat. Bank* v. *Harrison* (C. C.), 10 Fed. 243;

*Morgan* v. *South. Milwaukee Lake View Co.,* 97 Wis. 275, 72 N. W. 872.

Having elected to foreclose on the Lewis mortgage on the Laveen lands to satisfy any deficiency judgment which might accrue against Baldwin, instead of proceeding against Lewis on his notes, as the record shows he did, the same situation existed as in the foreclosure on the Baldwin land. He would be obliged to exhaust his remedy against the Laveen land before there would be a deficiency judgment against Lewis personally, and then, and not until then, would Lewis as surety for Hornback be justified in paying Traub and holding Hornback on his promise to assume the Lewis mortgage on the Laveen land.

It therefore appears that, in order to fix a liability to Traub as against Lewis personally, which the latter would be justified in paying or compromising, and then holding Hornback on his assumption of the mortgage on the Laveen land, the Baldwin land and the Laveen land together must have been insufficient to satisfy Traub's claim.

It is the contention of defendant that the only way in which that can be made to appear is by an actual sale under foreclosure, first of the Baldwin land, and second of the Laveen land. Plaintiff, however, claims that, if it can be shown that such a sale would not have been sufficient to satisfy Traub's claim, he was justified in making the compromise without actually waiting for the judgment and sale. He admits that before he can recover from Hornback the burden is on him to show such to be the fact, and also that the settlement he made was beneficial to Hornback. It appears from the record that the total indebtedness to Traub was in the neighborhood of $9,000. The only evidence on the value of the lands in question is that the Baldwin lands were then worth at the most $8,500, and that there was at least a $7,400 mortgage

debt thereon prior to the Traub mortgage. The testimony was also that the Laveen land was, at the peak of prices in 1920, worth $8,500, and at the time of the particular suit was worth not to exceed $4,000, and was subject to a first mortgage of $4,000, in favor of Niels Peterson. It is evident from this testimony, taken in the most favorable light to defendant, that the two pieces of land would not have sold for sufficient to satisfy the Traub claim. Neither common sense nor the law requires a vain thing, and we do not think it was necessary to go through the formality of selling the two pieces of land at a considerable expense, and thus greatly increase the debt, before Lewis was justified in attempting to settle an obligation which was bound to become fixed. The undisputed evidence herein shows that the settlement was for a much less sum than Lewis would have been obligated to pay had he allowed the matter to proceed through the various foreclosures and sales which defendant insisted were necessary. The whole situation is a most unfortunate one, but, like many others which have come to our attention, it grows out of the great inflation of land values during the cotton boom of 1920.

After the collapse in prices which ended that boom, it was inevitable that great hardship should fall upon many, and we can do nothing but apply the law as it is in determining where that burden must fall. Since under the law, as we view it, Lewis occupied the position of surety for Hornback in his relations with Traub, and since he was justified on the facts as they appear in compromising his liability to the latter, he was entitled to recover from Hornback the amount in which he was damaged by Hornback's failure to carry out his agreement to assume the mortgage on the Laveen land. If, as is suggested by defendant, Baldwin, the original debtor, has assets which should in

justice be applied in settlement of the matter, Horn-back has his remedy against him.

The judgment of the lower court is reversed, with instructions to enter judgment in favor of plaintiffs in the sum of $1,150.

McALISTER, C. J., and ROSS, J., concur.