[No. 26494.   Department Two.   May 11, 1937.]

ERNEST T. FREEPONS *et al., Appellants,* v. T. C. ELLIOTT *et al., Respondents.*[1]

[1]Reported in 67 P. (2d) 924.

*John C. Hurspool,* for appellants.

*Herbert Ringhoffer* and *Robert B. Walkinshaw,* for respondents Elliott.

*W. G. Coleman,* for respondents Bender.

HOLCOMB, J.—This action was begun by appellants suing to have a certain sheriff's deed, which had been issued to respondents Elliott, decreed to be a mortgage to secure the sum of $1,500 and unpaid interest, and that the deed be held by respondents Elliott as security only. Appellants further asked that respondents Bender be adjudged to have no right, title or interest in the premises or any part thereof, and that the title of appellants be quieted in them.

After issue being joined on the separate answers and cross-complaints of respondents Bender and of respondents Elliott alleging a balance due them from appellants of $236.65, a trial to the court, without a jury, resulted in a judgment in favor of respondents Elliott for a balance due, after rejecting certain items as not properly recoverable from appellants, of $90.17 as the balance due them on their note and one hundred dollars as attorney's fees on their counterclaim. The title of respondents Bender was quieted in them as against appellants. This appeal results.

On about March 1, 1929, appellants borrowed $2,750 from respondent T. C. Elliott and, as security therefor, gave him their promissory note and, as collateral, a certain promissory note and mortgage given by F. A. Chezig and Edith Chezig to appellants, dated November 10, 1927, for $2,750. The note which appellants gave respondent Elliott provided in part:

"As collateral security for the payment of this note and any renewal or extension thereof, I hereby pledge and deliver to payee the following security: note and

mortgage of F. A. & Edith Chezig $2,750 dated Nov. 10-1927. . . .

"In case of default in the payment of this note or interest thereon, the holder of this obligation is authorized to sell, without notice and at his option at public or private sale, the whole or any part of said security, and to apply the proceeds to the payment of this note and interest thereon, accounting to him for the surplus, if any. In case of a deficiency, I promise to pay to the holder the amount thereof forthwith after the sale. At the option of the holder, one or more sales may be had hereunder. .............. hereby waive demand of payment, notice and advertisement of sale. The holder may purchase at any such sale. Nothing herein contained shall preclude a suit upon this note without resort to said collateral, and I agree to remain bound, notwithstanding any extension or extensions that may be made to any party liable on this note, and consent is hereby given to any such extension or extensions."

The Chezig note was not paid when it became due and the note of appellants to Elliott was in arrears, and, after discussing the matter with appellants, it was orally agreed that the Chezig note and mortgage be turned back to appellants, with the understanding that they would foreclose the mortgage, saving Elliott the necessity of so doing, and in the event the property was bid in for a sum insufficient to satisfy the note and mortgage, that the sheriff's certificate of sale would be substituted for the note and mortgage, to be held under the same conditions as expressed in the original note, and with the understanding that Elliott would have the same right to sell or dispose of the property in the same manner as he could have disposed of the note and mortgage.

Appellant contradicted the testimony of Elliott as to the last statements above, but the trial court accepted Elliott's testimony as credible. Appellant also testified that he received all of the $2,750. Elliott also

testified, and his testimony was accepted by the trial court, that both he and appellant wanted to get $2,500 for the real estate if possible, that Elliott put the property in the hands of a real estate broker, but the best offer was for $1,800 by the Benders. About ten days before the contract with them was made final, in February, 1934, Elliott informed appellant of the Bender offer and that he could not get more than $1,800 for the property. Appellant said that he was sorry that he could not get more, but did not object to the sale to the Benders.

The foreclosure was had at the suit of appellants, and the sheriff's certificate of sale was assigned to respondent Elliott under that oral agreement. Thereafter, payments were not made by appellants so as to satisfy the entire indebtedness due Elliott.

The record also shows that respondents Bender, before purchasing the property, made a complete investigation as to ownership thereof by examining the county records and by conferring with other responsible business men. Although the property had become to be known as the Freepons property and was claimed by appellants, the court did not believe that the testimony was sufficient to put respondents Bender on notice and believed from the evidence and lack of evidence that they were innocent purchasers for value. After the Benders secured the property, they made improvements thereon to the extent of about $3,600. The main highway, over which appellants often passed, was within two or three blocks of this property, which could easily have been seen had they desired.

Appellants have in no way offered to make respondents Bender whole nor compensate them for the improvements they placed upon the land, but in their

complaint pray that the deed to the Benders be set aside.

Appellants assign as errors that the court erred (1) in not holding that the sheriff's deed was a mortgage and in holding that the Elliotts were the owners of the property and quieting title in them; (2) in holding that respondents Elliott were authorized to sell the property; (3) in holding that the value of the real estate was $1,800; (4) in holding and adjudging that respondents Bender were purchasers in good faith and in quieting title in them; (5) in rendering judgment against appellants on the counterclaim of respondents Elliott; (6) in allowing excessive attorney's fees; and (7) in rendering judgment against appellants and in not entering judgment for them according to the prayer of their complaint.

Several of the above specified errors can be disposed of very briefly and tersely. The second assignment involves only a question of fact dependent upon the testimony of the parties, which was reconciled in favor of respondent Elliott that he was authorized to sell the property.

Under our statutes, the certificate of sale issued to appellant was nothing more than a chattel real, or chose in action, at most, of which, as the husband of the community, appellant had the sole management and control and could sell, assign, and dispose of it as he saw fit. *Atwood v. McGrath,* 137 Wash. 400, 242 Pac. 648. It being the disposition of a chattel real or personal property, it was not necessary to be in writing, as argued by appellants.

The trial court found that the top value of the real estate at that time was $1,800. That being a question of fact and well within the testimony in the case, it will not be disturbed.

The fourth assignment, that the court erred

in adjudging that the defendants Bender were purchasers in good faith and in quieting title in them, is also untenable. The evidence shows that they paid what the property was actually worth at that time, and there was no concealment of their purchase or anything colorable about their transaction with Elliott.

██ Under the first assignment, appellants argue that the sheriff's deed was a mortgage and, as such, should be foreclosed by respondents Elliott. Just what good would be accomplished by that, we are unable to understand. The mortgage was foreclosed by appellants, and respondents Elliott resorted to no "sharp practice" with appellants, as is asserted on the last page of their brief. Appellants actually received the money from Elliott and had not repaid it all. It was not unconscionable for Elliott to insist upon being paid the balance owed him as his contract provided.

Appellants' argument that the sheriff's deed was a mortgage is based upon some of our cases citing texts and authorities which do not sustain the contention of appellant. *Clambey v. Copland,* 52 Wash. 580, 100 Pac. 1031; *Boyer v. Paine,* 60 Wash. 56, 110 Pac. 682; *Beverly v. Davis,* 79 Wash. 537, 140 Pac. 696. The first of those cases and the authorities quoted approvingly therein involved the question of whether an absolute deed was intended as a mortgage to secure a debt, and it was held that that question depends generally upon whether there was an existing indebtedness or liability which was subsistent and not discharged.

"The character of the transaction is fixed at its inception and is what the intention of the parties makes it. The form of the transaction and the circumstances attending it are the means of finding out the intention. If it was a mortgage in the beginning it remains so, in accordance with the maxim 'once a mortgage always a mortgage'; and if it was a conditional

sale at the start no lapse of time will make a mortgage of it." 1 Jones on Mortgages (8th ed.), § 314.

In the *Beverly* case, *supra,* among other things, we said:

"The character of the transaction is fixed at its inception, and the intention of the parties, when properly ascertained, must determine its nature."

See, also, Jones on Collateral Securities (3rd ed.), § 660; Colebrooke on Collateral Securities (2nd ed.), § 183; *Blood v. Shepard,* 69 Kan. 752, 77 Pac. 565.

If "once a mortgage always a mortgage," by the same token, if "once a pledge always a pledge." The note delivered by appellants to respondent Elliott cannot now be questioned. It was a specific, written pledge of the securities. It provided:

"In case of default in the payment of this note or interest thereon, the holder of this obligation is authorized to sell, without notice and at his option at public or private sale, the whole or any part of said security, and to apply the proceeds to the payment of this note and interest thereon, accounting to him for the surplus, if any. . . . At the option of the holder, one or more sales may be had hereunder. ............hereby waive demand of payment, notice and advertisement of sale. The holder may purchase at any such sale."

That was appellants' written contract. Now they attempt to repudiate it. They foreclosed their mortgage for the express purpose of eliminating such step on the part of respondent Elliott. The land in the hands of Elliott, as pledgee, was affected by a trust to convert it into money and pay over any balance of the proceeds remaining, after payment of the debt due from his debtor to him, or upon the debtor's payment of the debt, to release and quitclaim the land to him. Jones on Collateral Securities (3d ed.), § 660.

The law of pledges is materially different from that

of mortgages. The lien resulting from a pledge is subject to strict foreclosure. That resulting from a mortgage is not.

Where choses in action, the payment of which is secured by a real estate mortgage, are pledged as collateral security for the payment of a debt, and such real estate mortgage is foreclosed by the pledgee, and the title to the property taken by him under sheriff's deed, and he takes possession of the property thereunder, such title is vested in him and is substituted for the pledged choses in action, and is governed by the law of pledges, and not of mortgages. *Blood v. Shepard, supra.*

Once respondent Elliott had sold his substituted collateral, appellants could not redeem their pledge, because they had never attempted to redeem their pledge by tendering respondents Elliott the balance due them. Jones on Collateral Securities (3d ed.), § 660; 49 C. J. 976; *Blood v. Shepard, supra.*

The allowance of one hundred dollars as attorney's fees to respondents Elliott does at first blush seem excessive. It must be remembered, however, that they considered $236 was due them, part of which the trial court rejected. It was necessary, also, for respondents Elliott to make good on the contract to the Benders, so that the greater part of the defense fell upon Elliott and his counsel. Under all the circumstances, we do not consider the allowance of one hundred dollars attorney's fees to respondents Elliott excessive.

After studying the entire record, we consider the equities are very strongly in favor of respondents. What has been said covers the seventh assignment.

The decree is affirmed.

STEINERT, C. J., BEALS, TOLMAN, and ROBINSON, JJ., concur.