259 P.2d 253

**CZAPAR et ux. v. GINTER et ux.**

No. 5730.

Supreme Court of Arizona.

July 6, 1953.

Martin S. Rogers, Tucson, for appellants.
Udall & Udall, Tucson, for appellees.

LA PRADE, Justice.

This case presents an appeal from a judgment dismissing plaintiffs' complaint in replevin wherein it was sought to recover possession of certain personal property alleged to be in the possession of defendants and by them unlawfully detained, and allegedly worth $7,500 and damages for its unlawful detention.

Defendants denied the allegation of possession and unlawful detention and claimed that by virtue of a foreclosure sale of the chattels, of which plaintiffs had notice, that plaintiffs were guilty of laches, thereby waiving the right to attack the *title of defendants*. Defendants by counterclaim asked that the title to the chattels enumerated in plaintiffs' first cause of action be quieted in them. The action was tried and defended on the theory that defendants had secured title by virtue of the foreclosure sale, and were lawfully entitled to possession. For the first time on appeal they

claim that there is a want of proper parties in that the bill of sale given at the foreclosure sale of the chattels went to F. L. Ginter (father of defendant R. Y. Ginter), and not to defendants. After judgment on the realty mortgage (infra) was entered defendants took charge of the real estate and *all* the personal property, rented the store buildings and store fixtures, and collected the rents. This pretended defense comes too late.

Stripping a long and tedious factual situation to bare essentials it appears that plaintiffs (appellants here) mortgaged two separate pieces of real estate (St. Mary's Market and Del Mar Market) to defendants' assignor, securing an indebtedness evidenced by a promissory note in the principal sum of $13,500, calling for monthly payments. Upon default of payment, defendants, as owners and holders of the note and mortgage, brought suit to foreclose the realty mortgage. Judgment in the realty foreclosure action was entered for $11,500 principal then due, plus interest to date of judgment, plus $600 attorney fees, plus costs in the sum of $23.80, together with interest on the whole thereof at 8% until paid, and it was decreed that the whole of said sums and interest constituted a lien on the real estate. The judgment further directed a foreclosure and that special execution issue directing the Sheriff to seize and sell and apply the proceeds realized on the sale to the "satisfaction of plaintiffs' judgment, together with interest, costs *and*

*accruing costs * * *"*. (Emphasis supplied.) The note was further secured by a chattel mortgage executed and delivered simultaneously with the realty mortgage. This replevin suit has its origin in the chattel mortgage, as will more specifically appear later.

It should be noted here that there was no specific judgment for accruing costs. Counsel for defendants claim otherwise in that inferentially at least that was a judgment for accruing costs, to be inferred from the language of the judgment directing the disposition of the funds to be obtained on a sale.

At the sale defendants bid $12,562.69, the total then due on the judgment and including the sum of $30.20 costs "expenses of the sale". The Sheriff, in his return of sale, reported that the proceeds of sale satisfied the judgment in full "save and except for accruing costs". The clerk of the court, on receipt of the Sheriff's return, entered same on the judgment docket. An abstract of the judgment docket lists all the items of the judgment and recited the judgment was "Satisfied in full by sale under execution, except accruing costs * * *".

After the time for a redemption had expired, defendants demanded of the Sheriff that he execute and deliver Sheriff's deed, which he did. Defendants' counsel testified that in this behalf he expended, in defendants' behalf, the total sum of $58.63 for such items as revenue stamps affixed to Sheriff's deed, Sheriff's fee for deed, re-

corder's fee for recording deed, notice of sale, Sheriff's return on foreclosure, Sheriff's certificate of sale and Sheriff's fee of $2 for posting notice of sale.

Defendants, after receiving the Sheriff's deed, did not file in the realty foreclosure suit, any statement of costs that had accrued subsequent to the sale or statement of taxes paid or any statement indicating that there existed any deficiency.

Defendants, in order to reimburse themselves for this item of $58.63, and after the redemptionary period had expired and after issuance of Sheriff's deed, purportedly proceeded to foreclose the chattel mortgage by notice and sale, as provided for in Section 62–527, A.C.A.1939. A sale was conducted, at which sale the property described in the chattel mortgage was knocked off to one F. L. Ginter for the sum of $25. F. L. Ginter was the named payee in the note and the mortgagee in the mortgage, both of which had been assigned to defendants (his son and daughter-in-law). The property covered by the chattel mortgage was located in the property known as the St. Mary's Market, in which there was also other personal property belonging to the plaintiffs which was not included in the chattel mortgage. At the Del Mar Market there was more personal property of plaintiffs (store fixtures, refrigerators, scales, cash register, etc.), none of which had been mortgaged to defendants. Nevertheless, by virtue of the pretended sale on foreclosure of the chattel mortgage, defendants sought to retain possession of all of the chattels. There was and is no semblance of a legal defense to the replevin action for the personal property that was never included in the chattel mortgage.

The factual situation here discloses that there was *one* debt evidenced by a promissory note and secured by a realty mortgage and a chattel mortgage. Suit on the note and to foreclose the realty mortgage resulted in a judgment extinguishing the debt, as evidenced by the note. The applicable principal is stated thusly:

"A contractual duty or a duty to make compensation is discharged by merger when a judgment to enforce that duty is rendered against the party subject to the duty, and in favor of the party having the correlative right, by any court having jurisdiction over the subject matter and of the parties." Restatement of the Law, Contracts, Sec. 444, p. 831.

For general rule on merger of causes of action see Am.Jur., Judgments, Sec. 150, p. 903. After the debt had been reduced to judgment it was the latter that was secured by the mortgages.

It is the position of appellants that the judgment record in the realty foreclosure suit discloses that the judgment was satisfied in full, and no record having been made that there was any deficiency judgment, the defendants were not authorized to proceed with a foreclosure of the chattel mortgage. With this contention we agree.

88

Defendants, having elected to foreclose the realty mortgage, were bound to exhaust the mortgaged property before they could have a deficiency judgment. Sec. 62–520, A.C.A. 1939; Lewis v. Hornback, 28 Ariz. 546, 550, 237 P. 952. In Bank of Douglas v. Neel, 30 Ariz. 375, 381, 247 P. 132, 134, we said:

"Technically speaking, there is no such thing under our law as a 'deficiency judgment' in the sense that a formal judgment of that description is rendered by the court, or entered by the clerk for the amount not made by the sale of the mortgaged property. There is only the original judgment for the full amount of the indebtedness, upon which a deficiency may exist after the issuance and return of the special execution, or even perhaps of one or more general executions in addition. It has nevertheless been customary in ordinary parlance to refer to the amount still due after the return of the special execution as a 'deficiency judgment,' and it was in this sense we used the phrase in the case of Lewis v. Hornback, 28 Ariz. 546, 237 P. 952."

It is thus seen that it is the return of the Sheriff upon a special execution that establishes whether there is any deficiency. The return of the Sheriff in this case did not disclose any deficiency but indicated there might be accruing costs. A deficiency might have been established of record had defendants filed an additional cost bill or claim for accruing costs that they had paid. There being no deficiency judgment of record, there was no judgment debt. There being no judgment debt there was nothing for the chattel mortgage to secure. We hold that there was no basis for the pretended chattel mortgage foreclosure, and that the sale was null and void.

The judgment is reversed and remanded with directions to enter judgment for the plaintiffs, adjudging them to be the owners of and entitled to the immediate possession of all the personal property in controversy; that the trial court, on the record made, find the value of such property and the damages sustained by its unlawful detention and render the appropriate judgment.

STANFORD, C. J., and PHELPS, UDALL and WINDES, JJ., concur.