[No. 11233.  Department One.  July 21, 1913.]

## FRANK T. HOOVER et al., Respondents, v. H. P. BOUFFLEUR et al., Appellants.[1]

MORTGAGES—ABSOLUTE DEED AND OPTION TO REPURCHASE—INTENT— EVIDENCE—SUFFICIENCY. The rule requiring clear and convincing evidence that an absolute deed and option to repurchase were intended as a mortgage and not a sale, does not require the intent to appear on the face of the papers; and a mortgage is sufficiently established where it appears that property worth $4,000, subject to a balance of $2,000 due on a mortgage, was deeded in consideration of $250, most of which was applied on overdue installments on the mortgage, and only $7.50 paid to the grantor, that an option to repurchase within 30 days upon payment of $325, was given by the grantee, who made a studied effort to evade the effect of the usury laws, and there was a direct conflict in the testimony of the parties as to whether a loan or a sale was made.

Appeal from a judgment of the superior court for Spokane county, Miller, J., entered March 7, 1913, upon findings

[1]Reported in 133 Pac. 602.

in favor of the plaintiffs, in an action for equitable relief. Affirmed.

*John C. Kleber*, for appellants.

*William S. Lewis*, for respondents.

CHADWICK, J.—On the 9th day of February, 1912, plaintiffs were the owners of lot 10, in block 3, Richland Park addition to Spokane Falls. They had purchased the property sometime prior thereto for $3,800, and had made improvements thereon of considerable value. The trial court found the property to be worth more than $4,000 at that time. There was a mortgage for $3,000 on the property. This mortgage was payable in installments of $50 a month with interest. There was, at the time mentioned, three installments overdue on the mortgage, together with the interest, in all aggregating the sum of $228.75. Plaintiffs did not have the money to meet these payments and they negotiated with one Heaton, who brought them in contact with defendant. The amount desired by plaintiffs was $250. This, defendant agreed to advance, after looking at the property. Defendant testified—and he is supported by Heaton in this—that he refused to make a loan upon the property; that he told plaintiffs that he would buy the property, advance the $250, and give them an option to repurchase within three months, upon payment of $325. A deed was drawn and executed by the plaintiffs conveying the property to defendant subject to the unpaid balance of the mortgage; $1,000, including the $150 to be paid out of the loan or purchase price as the case may be, having been paid upon the mortgage hereinbefore referred to, leaving $2,000 still due. An option to purchase was then executed by plaintiffs in the form following:

"Option to Purchase.
"Spokane, Wash., Feb. 9th, 1912.—191
"The undersigned hereby agrees to sell to Frank T. Hoover or wife of Spokane, Wash. within 30 days from date hereof, the following described property, to wit: Lot ten (10) in

Block three (3) of Richland Park addition to Spokane Falls, now Spokane, Washington.  For the sum of Three hundred and twenty-five ($325) Dollars to be paid to the undersigned by the said Frank T. Hoover or wife on or before 90 days from date hereof, and if not so paid then this option to be null and void.          H. P. Bouffleur."

The $250 was dispensed as follows:  $10 was paid to Heaton.  Defendant testifies, and so does Heaton, that it was paid at the request of plaintiffs.  Two hundred and thirty-two dollars and seventy-five cents was paid in the form of a check drawn in favor of the mortgagee, the parties assuming that amount to be the true amount of principal and interest due, and $7.75 was paid to plaintiff Frank T. Hoover.  Defendant testifies that these payments were all directed by the plaintiffs.  The plaintiffs, on the other hand, insist that they applied for a loan to Heaton; that Heaton was at all times the agent of the defendant and that he arranged with defendant to make a loan of $250; that defendant went to the home of plaintiffs and satisfied himself that the security was ample and that they thereafter went to his office and executed the deed and accepted the option.  They say that nothing was said about rent for the place.  Defendant explains this omission by saying that he thought it would be no more than fair to give them the rent for the three months or until the expiration of the option.  The time having expired, and the plaintiffs having failed to repurchase the property, a notice to vacate was served upon them.  Thereupon plaintiffs tendered to defendant the sum of $90, that being the amount he would be entitled to recover under the usury statutes, Rem. & Bal. Code, § 6251 et seq. (P. C. 263 § 3), and demanded a deed.  This was refused, and in consequence this case was brought, and from a judgment in favor of the plaintiffs, defendant has appealed.

Appellant relies upon certain well settled principles of the law.  That is, that there is a certain integrity about a written instrument and especially a deed, and that to overcome its

terms and import testimony must be clear, cogent and convincing. He cites, *Dempsey v. Dempsey,* 61 Wash. 632, 112 Pac. 755; *Debney v. Smith,* 38 Wash. 40, 80 Pac. 199; *Reynolds v. Reynolds,* 42 Wash. 107, 84 Pac. 579; *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21; *Washington Safe Deposit & Trust Co. v. Lietzow,* 59 Wash. 281, 109 Pac. 1021; *Swarm v. Boggs,* 12 Wash. 246, 40 Pac. 941; *Dignan v. Moore,* 8 Wash. 312, 36 Pac. 146; *Boyer v. Paine,* 60 Wash. 56, 110 Pac. 682; *Reed v. Parker,* 33 Wash. 107, 74 Pac. 61; *Conner v. Clapp,* 37 Wash. 299, 79 Pac. 929.

He also relies upon the rule that the mere option to purchase will not in itself make a deed a mortgage. *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21. These cases do not deny the right of the plaintiffs to recover in this action. A court of equity looks to the intent of a contract rather than to its form, and although the spoken words of the witness may be at variance with the actual conduct of the parties, they will not be accepted or permitted to overcome the true intent as it is gathered from the whole transaction. *Johnson v. National Bank of Commerce, supra.* Although appellant was careful to refrain from the use of the words "loan" and "mortgage," and to impress upon the plaintiffs that he was buying the property, it is our duty to go beyond his spoken words and review and consider every material circumstance. The fact that the property was worth at least $4,000, and the amount paid by the defendant, or substantially all of it, was paid upon the mortgage thus reducing that encumbrance for the benefit of the defendant if a sale was indeed contemplated, when coupled with the option agreement or defeasance, are circumstances which in our judgment make it the imperative duty of a court of equity to declare the deed executed by respondents to be a mortgage. Otherwise we would be put to the stress of holding that respondents had sold a piece of property worth $2,000 for a

cash payment of $7.50 and three months rent. We think the case falls squarely within the rule declared in *Mears v. Strobach*, 12 Wash. 61, 40 Pac. 621:

"It is true that there was testimony to the effect that the plaintiffs [appellants] refused to make a loan and would only consent to advance the money upon an absolute conveyance to them of the property. But this testimony, interpreted in the light of the instruments actually executed, and of the other facts sufficiently proven by the evidence, fails to satisfy us that the transaction was not, after all, substantially one of lending and borrowing. In our opinion there was no intention on the part of either of the parties to do more than on the one part to secure the loan of the money and on the other to loan it and get proper security for its repayment with interest. This being so, the bare fact that they refused to loan the money and take a mortgage only tends to show that they thought they could evade the law, requiring the mortgage to be foreclosed before they could get possession of the property, by taking a deed, as they did, and giving a lease and option to purchase to the grantors named in the deed."

Appellant has emphasized that part of the opinion in the case of *Johnson v. National Bank of Commerce, supra*, wherein we said:

"We think the better rule is that where there is a deed absolute in form, either *with* or without a contemporaneous agreement for a resale of the property, *there being nothing upon the face of the collateral papers to show a contrary intent*, the presumption of law, independent of evidence, is that the transaction is what it appears to be, and that he who asserts the writing should be given a different construction, must show, by clear and convincing evidence, that a mortgage and not a sale with the right to repurchase was intended."

We may adopt this expression as a fair statement of the general rule, but it was not our intention to hold that the intent of the parties must necessarily appear upon the face of the collateral paper. To do so would kill that true spirit of equity with which a court should approach cases of this kind.

Viewing the case at bar from all its angles and taking it by its four corners, we have no doubt that the transaction was conceived and carried out with purpose to evade the law designed to prevent the taking of usury. The record shows what seems to be a studied effort on the part of the defendant to bring himself within certain expressions of this court as he has gathered them from our written opinions. "That a deed regular in form is presumptive evidence of the highest character, that it voices the intention of the parties," that "evidence relied on to prove that a deed is in fact a mortgage must be clear, cogent and convincing;" that "the evidence must show that it was intended by both of the parties;" that "a deed will not be held to be a mortgage when it appears that the grantee had declined to make a loan upon the property;" and that "a deed will be held to be absolute where there is nothing upon the face of the collateral papers to show a contrary intent." All of these expressions will be found in the cases hereinbefore cited. The statements were pertinent at the time they were employed, but an examination of the cases will show that they were applied as governing rules where there was no such lack of consideration as would shock the conscience, or the case was so wanting in equity or the equities were so balanced as to compel us to look to the instruments alone for guidance. It is certain that we never intended to mark a path around the statutes designed to protect the necessitous borrower from the exactions of those who are disposed to take unlawful return for a loan or forbearance of money.

Affirmed.

GOSE, PARKER, and MOUNT, JJ., concur.