[No. 11487. Department One. May 8, 1914.]

MARTHA E. BEVERLY, *nee* MARTHA E. HULL, *Respondent,* v.
E. R. DAVIS *et al., Appellants.*[1]

MORTGAGES—DEED OR MORTGAGE—ACTIONS — PRESUMPTIONS — EVI-
DENCE—INTENT. An action for the reformation of an absolute deed,
which the parties intended as a mortgage, is grounded on fraud,
and equity permits the fullest inquiry; but the plaintiff must over-
come the presumption that written instruments are what they pur-
port to be, by clear and convincing evidence, the intent of the parties
at the inception of the transaction controlling.

SAME—DEED OR MORTGAGE—EXISTENCE OF DEBT—IMPLIED PROMISE.
In an action to declare an absolute deed a mortgage, the absence
of a promise to repay, evidenced by a written instrument, is not
conclusive that no personal debt exists, since a promise may be im-
plied if the circumstances show a loan.

SAME — DEED OR MORTGAGE — EVIDENCE — SUFFICIENCY. Findings
that an absolute deed, with an option to repurchase, was intended as
a loan, are supported by the evidence, where the grantor testified
that such was the intention, and it appears that the deed was made
in consideration of $100 advanced, and the payment of the grantor's
debts to the extent of $2,125, with other small advances made in ex-
tending time for the option to repurchase (one of which was under
a written agreement "to loan" $500), until about $3,200 had been ad-
vanced, and disinterested witnesses fixed the value of the property
at eight to ten thousand dollars.

MORTGAGES—REDEMPTION. Upon ordering the foreclosure of an
absolute deed intended as a mortgage, the statutory right of re-
demption from the sale should not be curtailed, as the right in-
heres in the mortgage, whatever its form.

Appeal by defendant from a judgment of the superior court
for Okanogan county, C. H. Neal, Esq., judge *pro tempore,*
entered March 31, 1913, in favor of the plaintiff, in an action
for reformation. Affirmed.

*Smith & Gresham,* for appellants.

*Whitney & Hughes* and *Burton & Jennings,* for respond-
ent.

[1]Reported in 140 Pac. 696.

Gose, J.—The purpose of this action is to have a trans-
action, evidenced by a deed and option, declared a mortgage.
The court found that the instruments were intended as a
mortgage, directed the defendants, by an interlocutory
order, to state the amount of the indebtedness within thirty
days, and in case of failure to do so, left them to seek their
remedy in an independent action to foreclose the mortgage.
The defendants filed a statement of the amount advanced to
the plaintiffs within the time fixed, and the court thereafter,
upon notice to the plaintiffs, determined the amount due.
Whereupon a judgment was entered in favor of the defend-
ants and against the plaintiff wife for $3,298.02, with in-
terest.   It was also adjudged that the mortgage be fore-
closed, and that the property be sold in the manner pro-
vided by law for the sale of real estate on mortgage fore-
closure.   The defendants have appealed.

The essential facts are these: The respondent wife, here-
after called the respondent, then a widow, on the 13th day
of January, 1912, conveyed to the appellant husband, here-
after called the appellant, by a deed of general warranty,
160 acres of land in the Methow Valley, in Okanogan county.
She also assigned him 483 shares of water stock.   On the
same day, and as a part of the same transaction, the re-
spondent and the appellant executed a contract which is in
form an option.   The contract recites the execution of the
deed, acknowledges that the respondent has received $100 in
cash, and recites that the appellant has agreed to pay cer-
tain of her obligations, which are enumerated and which ag-
gregate $2,125.   It provides that the appellant shall pay
the enumerated items, and that,

"If at any time on or prior to May 1, 1912, the said
Martha E. Hull [the respondent] desires to and shall pay
to said E. R. Davis the aggregate of the amount so paid,
together with cash payments with interest thereon at the
rate of twelve per cent per annum from this date, then the
said E. R. Davis shall re-convey said premises to said
Martha E. Hull; but if such payments shall not be made

strictly as herein provided for, it shall be optional with the said E. R. Davis to reconvey said premises. This to be considered merely as an option to purchase, expiring on said date."

The appellant paid the enumerated items. On the 23d day of April following, he extended the option to the first day of November, the appellant then advancing to the respondent $150, and agreeing to advance $350 additional, the entire sum to be used by the respondent in improving the property. This agreement provides that the advances are subject to the same terms and conditions as those made under the first agreement, and that they should draw the same rate of interest. The respondents were married on the 29th day of April. On the 5th day of June, the appellant and both respondents entered into another contract, which recites that the appellant "has agreed to loan" to the respondent $500, of which $275 has been paid;" that, in consideration of respondent's waiving any right to a lien against the land for "work and labor" while in possession of the land, the appellant agrees to advance the remaining $225 upon the execution of the contract. The respondent remained in possession of the land.

The respondent testified, in substance, that the money was advanced as a loan at interest at the rate of twelve per cent per annum, and that she thought the papers evidenced a mortgage, until a short time before the April extension. The theory of the appellant is that there was an absolute sale and conveyance of the land with an option to repurchase, and that there was no loan and no debt, either express or implied. The action was commenced within six weeks after the last option expired.

The controlling legal principles are simple and well settled in this state. The character of the transaction is fixed at its inception, and the intention of the parties, when properly ascertained, must determine its nature. The action is grounded in fraud, and equity permits the fullest inquiry,

to the end that the intention of the parties may be ascertained
and enforced.   The presumption is that the transaction is
what it purports, and the one asserting that the written in-
strument masked the real transaction must prove his case
by clear and convincing evidence.   *Johnson v. National Bank
of Commerce*, 65 Wash. 261, 118 Pac. 21; *Kegley v. Skill-
man*, 68 Wash. 637, 123 Pac. 1081; *Hoover v. Bouffleur,*
74 Wash. 382, 133 Pac. 602.

· But it is argued that there was no debt; hence there could,
in the very nature of things, be no mortgage.   Upon this
phase of the case, it is sufficient to say that, if the respond-
ent's version of the transaction is true, there was a loan,
and hence an enforceable obligation to repay.   The court,
as we have seen, adopted this view, and entered a personal
judgment. against the respondent.   While the existence of a
written promise to repay the money advanced is of great
evidentiary value in arriving at the intention of the parties,
yet the absence of such a promise is not conclusive that no
personal debt exists.   If the circumstances show a loan, an
implied promise to re-pay springs from that fact alone.
*Kirkpatrick v. Post*, 53 N. J. Eq. 591, 32 Atl. 267.

Was the transaction an absolute sale with only an option
to repurchase, or was it a loan upon the land and the 483
shares of water stock?   In determining this question, we will
speak principally of only one phase of the evidence.   The ap-
·pellant said that there are "boulders, small rock, rock that
will weigh 200 pounds, down to the size of your fist," upon
the land, and when asked "Are there very many of them?"
answered, "They are very thick."   He also said that $3,000
would be a fair price for the land.   Two of his witnesses
fixed the value of the land and water stock at $2,500; another
fixed it at $3,000, and still another at $1,500.   The re-
spondent's testimony is to the effect that sixty acres of the
land carrying water rights are under a water ditch, that
about seventy acres are in cultivation, and that 115 to 120
acres are tillable; that forty or forty-five acres were planted

to apple trees two years old in January, 1912, and that about five or six acres were then in alfalfa. The respondent said that the land was reasonably worth $15,000. Her husband said that the appellant stated to him that it ought to be worth $16,000. This appellant denies. The land is on the Methow river, four or five miles from the town of Twisp. Mr. McGee, a merchant at Twisp, said that the land was worth $9,000. Mr. Sackett, who was engaged in the loan and real estate business at Twisp, valued it at not less than $10,000; and a neighbor of the respondent put the value at $8,000. The witnesses unite in saying that the land had not appreciated in value since the execution of the deed. The trial court, no doubt, adopted the values fixed by the respondent's witnesses. We say this confidently, because in all other respects the evidence, apart from the writings, seems to preponderate in favor of the appellants. If the value fixed by the appellants' witnesses is correct, appellants should welcome a public sale as it will at least afford them a chance to realize upon their judgment $3,298.02, with interest at twelve per cent per annum from March, 1913. On the other hand, if the respondent's witnesses correctly valued the land, it would be unconscionable to treat the transaction as a sale absolute in terms with only an option to repurchase. *Hoover v. Bouffleur, supra.* If the property is reasonably worth $8,-000 to $10,000, the difference between the amount advanced and the value of the property is so great as to bring the case within the rule of *Johnson v. National Bank of Commerce, supra.*

The evidence is not entirely clear as to whether the several witnesses, in giving their opinion upon the question of value, included the water stock. We assume that they did. If they did not, the result would not be changed. In each instance, the value of the land would be enhanced to the extent of the value of the stock. One of the appellants' witnesses stated definitely that, in his opinion, the land together with the stock was worth about $1,500. Tested by the rules

announced in the previous citations, we cannot say, upon the entire record, that the court erred in treating the respondent's evidence as clear and convincing, and declaring the transaction a mortgage.

The appellants contend that the respondent should have been required to redeem within a reasonable time. We have held, that the statutory right of redemption inheres in a mortgage and cannot be waived; that the rule is "once a mortgage, always a mortgage." *Plummer v. Ilse*, 41 Wash. 5, 82 Pac. 1009, 111 Am. St. 997, 2 L. R. A. (N. S.) 627; *Boyer v. Paine*, 60 Wash. 56, 110 Pac. 682. We have also held that the statutory right of redemption cannot be cut off by a strict foreclosure. *Dane v. Daniel*, 23 Wash. 379, 63 Pac. 268. There cannot be one rule where the mortgagee takes the legal title as security and another where he takes a mortgage with the usual defeasance clause. The procedure ought to be the same in both cases.

The judgment is affirmed.

CHADWICK, ELLIS, and MAIN, JJ., concur.