[No. 28540. Department One. May 4, 1942.]

ANDREW H. PHILLIPS, *Respondent*, v. LOUISE BLASER *et al., Appellants,* E. A. EDWARDS, *Respondent.*[1]

[1]Reported in 125 P. (2d) 291.

440

*Ott & Cross,* for appellants.

*Miller & Miller,* for respondent Phillips.

*Harrison M. Berkey,* for respondent Edwards.

MILLARD, J.—In 1927, Andrew H. Phillips acquired a section of wheat land in Adams county, which was to have been offered for sale by the county October 17, 1936, for tax delinquency in the amount of $902.67. The sale could be postponed if $298.60 were paid prior to October 17, 1936. Phillips' endeavors to obtain a loan in the amount of $298.60 on the property from a number of banks and from a number of his neighbors, were unsuccessful. October 15, 1936, two days before the property was to be sold at tax sale, Phillips called

on W. L. Wenzelburger, who resided about five miles from the land in question, informed him of his predicament, and requested a loan in the amount of $298.60. Wenzelburger testified that Phillips also offered to sell the property to him. Wenzelburger expressed a lack of interest in the matter of purchasing Phillips' section of land, and stated that he did not have any money but that his sister-in-law, Louise Blaser, who worked and lived in the Wenzelburger home, might lend $298.60 to Phillips. Following her discussion of the subject with Wenzelburger and Phillips, Miss Blaser agreed to advance $298.60 to Phillips.

October 16, 1936, about 3:30 p. m., Miss Blaser, Wenzelburger, and Phillips went to the office of an attorney, who was also a notary, in Ritzville, who prepared in longhand a quitclaim deed and took Phillips' acknowledgment thereto. That instrument recites that Phillips quitclaims unto Louise Blaser (mistakenly spelled "Balser") Phillips' section of land for a consideration of one dollar and other valuable consideration. Contemporaneously with the execution of the quitclaim deed, Miss Blaser and Phillips entered into a written agreement for the sale of the section of land in question by Miss Blaser to Phillips for $598.50, payable on or before November 1, 1937. The agreement provides that, unless Phillips pays $598.50 to Miss Blaser on or before November 1, 1937, the contract shall be void but that, in the event Phillips pays to Miss Blaser $598.50 prior to November 1, 1937, Miss Blaser will execute a quitclaim deed to the land in favor of Phillips.

Immediately after the execution of the two instruments, Phillips, Blaser, and Wenzelburger went to the office of the county treasurer, to whom Phillips paid $298.60 by check from Wenzelburger to Phillips in that amount. The county treasurer issued a receipt to Phillips and sale of the land for taxes was averted. The

quitclaim deed was placed of record the same after-noon with the county auditor for Adams county. The contract was never recorded.

April 20, 1937, Phillips, who at all times remained in possession of the land, exercised the right of leasing the land to Colley Brothers. Under the terms of that written lease, the lessees were obligated to farm the land and pay to Phillips a rental of one-sixth of the grain crop. That the Colley Brothers were on the land was known to the Wenzelburgers and Miss Blaser. Prior to his purchase of the land from Miss Blaser, E. A. Edwards knew that Colley Brothers were farm-ing the land under a lease from Phillips.

October 29, 1937, by check in the amount of $494.96 on his account with the First National Bank of Lind, Wenzelburger paid to the county treasurer for Adams county taxes due on the section of land in question. A few days thereafter, Blaser and Wenzelburger com-missioned a realtor at Connell to sell the subject matter of this controversy for four thousand five hundred dol-lars, which was reduced to four thousand dollars under an agreement with E. A. Edwards to pay cash therefor. The attorney who examined the abstract for Edwards, advised the execution of a new deed from Phillips to Blaser showing the grantor was a bachelor, that Miss Blaser was a spinster, and that the true name of the grantee was "Blaser," not "Balser." The deed from Miss Blaser to E. A. Edwards was executed January 17, 1938. A corrected quitclaim deed was presented to Phillips for signature but he refused to execute same.

An attorney took the original deed, which was writ-ten in longhand on a form October 16, 1936, struck the words "single man" and wrote the word "bachelor" after the name of A. H. Phillips. He changed the name from "Balser" to "Blaser," struck the words "single

woman," and wrote the word "spinster" following the name of the grantee. In the body of that instrument, above the signature of Phillips and without the latter's knowledge or consent, and with knowledge at the time that Phillips refused to make a new deed, the attorney wrote the following in longhand, which statement was written in the deed at the request of Louise Blaser and, of course, purports to be the statement of the grantor:

"(It is the intention of this deed to correct spelling of the name of the grantee in that certain deed recorded in Book 56 of Deeds at page 272-3 of the records of the County Auditor of Adams County, Washington, in which said deed the surname of the grantee, was given as "Balser" instead of "Blaser," that the mispelling of the name of the grantee was an error of the scrivener.)"

After this unauthorized correction of the original deed, it was refiled February 24, 1938. The abstract of title to the property was continued, containing this re-filed deed at page fifty-five of the abstract, and was presented to Edwards' attorney as the duly acknowledged deed of Phillips. Edwards and his attorney had notice in the abstract, before sale by Blaser to Edwards was consummated, that this so-called new deed which was required by Edwards was not a *new deed*; it bore the same acknowledgment of October 16, 1936.

When the option to sell the property to E. A. Edwards was signed, Edwards gave one check, dated November 17, 1937, in the amount of one hundred dollars payable to Wenzelburger and another in the amount of one hundred dollars payable to the realtor. On completion of the transaction, another check was given by Edwards in the amount of six hundred dollars and a draft in the amount of thirty-two hundred dollars, both of which were delivered to the attorney for Miss Blaser and Wenzelburger, making the cash consideration for the sale four thousand dollars. The checks, with the

exception of the one to the realtor and the draft, were all handled by Wenzelburger. Five days prior to closing the transaction between Edwards, Blaser, and Wenzelburger, those three persons discussed the question of Phillips' ownership of the land, but despite the information he had, Edwards paid the consideration to Blaser and Wenzelburger.

An action was instituted by Phillips to have his quitclaim deed and the contemporaneously executed contract construed as a mortgage, and his title to the section of land in question quieted. Wenzelburger and wife are residents of the state of California. Following service upon them of summons and complaint in that state, they made a general appearance to the action by filing their demurrer. Subsequently they vainly attempted to disclaim any interest in the land. The cause was tried to the court, which entered a judgment in favor of Phillips against the Wenzelburgers, Blaser, and Edwards, who actually received rental from the property, but provided that, upon payment of the rental money into the clerk's office, the Wenzelburgers and Blaser should have a lien upon that portion which they had expended for taxes (and legal interest thereon) represented by Wenzelburger's checks in the amounts of $298.60 and $494.96; and gave Wenzelburgers and Blaser credit to that extent on the four thousand dollar judgment against them in favor of Edwards. The Wenzelburgers and Louise Blaser appealed from that judgment.

Counsel for appellants argue that respondent Phillips failed to sustain the burden of proof that the transaction was a mortgage instead of a sale with option to repurchase the premises on or before November 1, 1937, by payment of a bonus of three hundred dollars to Miss Blaser for the amount of $298.60 advanced by

her to Phillips to enable him to prevent sale of his property for taxes.

The evidence is clear and convincing that the Wenzelburgers and Miss Blaser made a loan to respondent Phillips, and that there was no intention on the part of the lenders and the borrower that the transaction be an absolute sale rather than an equitable mortgage. To hold otherwise would permit the exaction from Phillips of usurious interest or defeat his equity of redemption and force him to relinquish his rights in the real property without consideration, which would be unconscionable.

In *Collins v. Denny Clay Co.*, 41 Wash. 136, 82 Pac. 1012, we held, in harmony with the weight of authority, that a mortgagor cannot through any device bargain away his right of redemption at the time of giving the mortgage; that, while a mortgagor may release his equity of redemption to the mortgagee by subsequent agreement, the courts look upon such agreements with distrust, and, if it appears that the mortgagee took advantage of the necessities of the mortgagor, or that the consideration for such release of the mortgagor's equity of redemption is grossly inadequate, the release will be disregarded and the original relationship of the parties held to continue.

No other reasonable conclusion may be drawn from the facts in this case than that Wenzelburger and Miss Blaser endeavored to take advantage of the necessitous circumstances of respondent Phillips. The evidence is conclusive that the alleged consideration of $298.60 advanced to Phillips is grossly inadequate. While the section of land was idle for a number of years and Phillips had difficulty in obtaining a loan thereon of three hundred dollars to avert tax foreclosure, appellants had no difficulty in selling the same property

to Edwards for cash in the amount of four thousand dollars.

In *Hoover v. Bouffleur*, 74 Wash. 382, 133 Pac. 602, plaintiff, who owned real property, valued in excess of four thousand dollars, which was subject to a mortgage in the amount of two thousand dollars in arrears, attempted, as in the case at bar, to borrow two hundred and fifty dollars to meet overdue installments on the mortgage. Defendant lender testified that he refused to make a loan upon the property but that he informed plaintiff that he would buy the property, advance the two hundred and fifty dollars, and give plaintiff an option to repurchase the property within three months upon payment of three hundred and twenty-five dollars. A deed was executed by the plaintiff conveying the property to defendant subject to the unpaid balance of the mortgage and then an option to repurchase the property was executed. In the case at bar, Phillips executed a quitclaim deed to Blaser and signed a contract in which he promised to buy the land. There was no mention of an option to repurchase. Appellant in that case relied, as appellants in the case at bar rely, upon certain well-settled principles of law. That is, the integrity of a deed is such that, to overcome its terms, testimony must be clear and convincing; that the mere option to purchase will not in itself make a deed a mortgage.

*Johnson v. National Bank of Commerce*, 65 Wash. 261, 118 Pac. 21, L. R. A. 1916B, 4, was cited by appellant in *Hoover v. Bouffleur, supra*, and is cited by counsel for appellants in the case at bar in support of their contention. The following language from our opinion in *Hoover v. Bouffleur, supra*, is a complete answer to the argument of appellant in the case at bar, as it was to appellant in the case cited:

"Appellant has emphasized that part of the opinion in the case of *Johnson v. National Bank of Commerce, supra,* wherein we said:

" 'We think the better rule is that where there is a deed absolute in form, either *with* or without a contemporaneous agreement for a resale of the property, *there being nothing upon the face of the collateral papers to show a contrary intent,* the presumption of law, independent of evidence, is that the transaction is what it appears to be, and that he who asserts the writing should be given a different construction, must show, by clear and convincing evidence, that a mortgage and not a sale with the right to repurchase was intended.'

"We may adopt this expression as a fair statement of the general rule, but it was not our intention to hold that the intent of the parties must necessarily appear upon the face of the collateral paper. To do so would kill that true spirit of equity with which a court should approach cases of this kind.

"Viewing the case at bar from all its angles and taking it by its four corners, we have no doubt that the transaction was conceived and carried out with purpose to evade the law designed to prevent the taking of usury. The record shows what seems to be a studied effort on the part of the defendant to bring himself within certain expressions of this court as he has gathered them from our written opinions. 'That a deed regular in form is presumptive evidence of the highest character, that it voices the intention of the parties,' that 'evidence relied on to prove that a deed is in fact a mortgage must be clear, cogent and convincing;' that 'the evidence must show that it was intended by both of the parties;' that 'a deed will not be held to be a mortgage when it appears that the grantee had declined to make a loan upon the property;' and that 'a deed will be held to be absolute where there is nothing upon the face of the collateral papers to show a contrary intent.' All of these expressions will be found in the cases hereinbefore cited. The statements were pertinent at the time they were employed, but an examination of the cases will show that they were applied as governing rules where there was no such lack of

consideration as would shock the conscience, or the case was so wanting in equity or the equities were so balanced as to compel us to look to the instruments alone for guidance. It is certain that we never intended to mark a path around the statutes designed to protect the necessitous borrower from the exactions of those who are disposed to take unlawful return for a loan or forbearance of money."

Miss Blaser's statement that she charged a rate of interest in excess of one hundred per cent on the money advanced to Phillips, entitled the latter to the protection of a court of equity. The evidence is overwhelming that appellants not only endeavored to defeat the equity of redemption to which respondent mortgagor is entitled as of right, but that in doing this they imposed the payment of an usurious interest rate upon him. *Hoover v. Bouffleur, supra,* and the case at bar, on principle, are indistinguishable. See, also, *Beverly v. Davis,* 79 Wash. 537, 140 Pac. 696, to the effect that a deed with a mere option to repurchase will be construed as a mortgage where there was an existing disparity between the value of the land and the amount of the indebtedness.

The trial court correctly found that the original transaction was an arrangement to secure repayment of money borrowed instead of a sale, that the subsequent purchaser (Edwards) from the equitable mortgagee (Blaser) was not a purchaser in good faith, and then proceeded to place the parties in *status quo.* The statute (Rem. Rev. Stat., § 406 [P. C. § 8079]) grants to the superior court authority to enter a judgment which will determine the ultimate rights of all the parties to the action.

"Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the

parties on each side, as between themselves." Rem. Rev. Stat., § 406.

So, too, the case at bar is of equitable cognizance, and when equity assumes jurisdiction over the subject matter of the action and the parties to be affected by its decree, it will retain jurisdiction for all purposes. *Income Properties Inv. Corp. v. Trefethen,* 155 Wash. 493, 284 Pac. 782; *Island County v. Calvin Phillips Co.,* 195 Wash. 265, 80 P. (2d) 840.

Wenzelburger and wife were nonresidents of this state at the time they were served with summons and complaint. They voluntarily consented to the jurisdiction of the court by making a general appearance. Subsequent to filing their demurrer to the complaint, they endeavored to disclaim any interest in the real property in controversy for the undoubted purpose of preventing the entry of a personal judgment against them. The court, having acquired jurisdiction over the persons of Wenzelburger and wife, could retain jurisdiction in order that a complete remedy might be afforded to all parties to the action.

The judgment is affirmed.

ROBINSON, C. J., MAIN, STEINERT, and DRIVER, JJ., concur.