[No. 39127-5-I. Division One. April 20, 1998.]
BARBARA PEARSON, ET AL., *Appellants*, v. JOHN GRAY, ET AL., *Respondents*.

*Michael T. Schein*, for appellants.

*John S. Tracy* of *Tracy McDaniel & Buchholz*, for respondents.

GROSSE, J — Barbara Pearson and Bernice Rauls appeal a trial court order granting summary judgment in a quiet title action and a writ of restitution in favor of John, Maria, Jeffrey, and Lisa Gray. Pearson and Rauls contend that genuine issues of material fact exist as to whether Rauls' grant of a quitclaim deed to the Grays in exchange for a short term loan was intended as a grant of legal or equitable title. When a defendant files a motion for summary judgment in a quiet title action on the basis of plaintiff's absolute conveyance of the property to the defendant by way of quitclaim deed, but then supports the motion by providing a simultaneously executed contract that calls into question the circumstances surrounding the granting of the deed, summary judgment must be denied. Accordingly, we reverse the trial court's ruling and remand the case for further proceedings.

## FACTS

Barbara Pearson owned a home that she quitclaimed to her sister, Bernice Rauls, in November 1994. Pearson and Rauls later took out a 90-day loan with the Grays. The loan was secured by a quitclaim deed signed by Rauls and a simultaneously executed contract, drafted by the Grays, signed by both Pearson and Rauls, entitled "Addendum/ Amendment to Purchase and Sale Agreement." The terms of the Addendum are as follows:

> TERMS OF REPAYMENT: $8,015.53 plus $500.00 interest is due ninety (90) days from Thursday, September 28, 1995. Buyer agrees to make no major financial decisions for 90 days. If total amount due is not paid back within 90 days, the property is to be vacated immediately. In addition, Bernice. Rauls and Barbara Pearson agree to pay John Gray $1,216.83 per

month (grace period 5 days, late fee \$121.68) due on the 1st day of each month as rental for the premises. If these rental payments are not received by the 5th of any month, Bernice Rauls and Barbara Pearson agree to pay late fees. As agreed if all monies advanced are paid in full by or on December 28, 1995, buyers agree to return Deed of Trust for property described above.

In the sentence applying to the rental payments, the phrase "pay late fees" is handwritten over the crossed-out, typed language requiring Pearson and Rauls to "vacate the premises immediately." The quitclaim deed was used in place of a deed of trust as specified in the Addendum.

Pearson paid the first rental payment for late September through late October. When she did not pay the November rent by November 5, the Grays issued a three-day notice to pay rent or vacate, dated November 8, 1995. The Grays then recorded their quitclaim deed on November 16, 1995, and filed an unlawful detainer action on November 20, 1995.

In December, Rauls attempted to make payment for less than the total amount due, but the Grays rejected the payment as untimely. On December 27, 1995, Pearson filed an action to quiet title, and for fraud and unjust enrichment. On March 19, 1996, the Grays filed a motion for summary judgment in the quiet title action contending that neither Rauls nor Pearson had standing because they had quitclaimed their interest in the property to the Grays. Rauls did not appear at the hearing, and Pearson merely relied on the complaint, failing to present any evidence as to the invalidity of the deeds. The trial court granted the Grays' motion, concluding that neither Pearson nor Rauls had standing. The trial court ruled on the merits in favor of the Grays on the unlawful detainer action, and granted a writ of restitution for the unpaid rent, late fees, and attorney fees and costs in the amount of \$10,060.47. Pearson and Rauls appeal.

## DISCUSSION

An action to quiet title can be asserted only by a

real party in interest.[1] Pearson executed a quitclaim deed to Rauls, and Rauls executed a quitclaim deed to the Grays. The trial court concluded that by executing the deeds, Pearson and Rauls no longer had an interest in the property because "a person who has quit claimed interest in the property at issue does not have standing under RCW 7.28.010 to bring a quiet title action." Because the quitclaim deed, standing alone, is not dispositive of the parties' intent, we must reverse.

Pearson and Rauls relied on their complaint in contesting the Grays' motion. While they appropriately raised allegations in their complaint which are material to their case, the allegations themselves were merely suppositions or opinions, lacking factual basis upon which a court could deny a summary judgment motion. The "facts" required by CR 56(e) are evidentiary in nature, and ultimate facts or conclusions of fact are insufficient.[2] Because Pearson and Rauls' complaint does not establish a question of material fact, our review is limited, as the trial court was limited, to consideration only of those documents submitted by the Grays in support of their motion.

The Grays submitted a quitclaim deed, along with a simultaneously executed contract. While the quitclaim deed is absolute in form, the contract, especially when viewed in light most favorable to Pearson and Rauls, evinces a loan of money in exchange for the deed, i.e., the granting of equitable title. As a result, the contract establishes sufficient questions as to the nature of the transaction to require the trial court to reject a motion for summary judgment based on standing.

The contract states that a $4,000 cash payment was to be "secured" with a deed of trust. It further states that if "all monies advanced are paid in full by or on December 28, 1995, buyers agree to return the deed of trust for property described above." In the portion of the contract

---

[1]See *Magart v. Fierce*, 35 Wn. App. 264, 266, 666 P.2d 386 (1983).

[2]*Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988).

concerning the "rental" period, language requiring Pearson to vacate the premises when she failed to make timely payments was substituted for language requiring the payment of late fees. All of these facts are consistent with the establishment of a mortgage, and the granting of equitable rather than legal title.

The contract contains language similar to that used in *Phillips v. Blaser*,[3] where the Washington Supreme Court concluded that an absolute conveyance in that case, in the form of a quitclaim deed, was in fact an equitable mortgage subjecting the mortgagee to the mortgagor's right of redemption. In *Blaser*, a farmer facing tax foreclosure executed a quitclaim deed to a private lender and entered into a contemporaneous agreement for the sale of the land. The agreement provided that if payment of a specified amount was received on or prior to a particular date, the lender would void the contract and execute a quitclaim deed in the farmer's favor.[4] The court stated that while the general rule is a presumption that a transaction by quitclaim deed is a conveyance, it is in the " 'spirit of equity with which a court should approach cases of this kind.' "[5] The court concluded that the evidence was clear and convincing that the agreement was intended as an equitable mortgage rather than an absolute sale.[6]

If the quitclaim deed and the addendum are the extent of the evidence as to the parties' intent in this transaction, it is clear that this is an equitable mortgage rather than an absolute sale. We need not reach this conclusion, however, for in "ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue of material fact exists, not to resolve any existing factual is-

---

[3]*Phillips v. Blaser*, 13 Wn.2d 439, 125 P.2d 291 (1942).

[4]*Id.* at 440-41.

[5]*Id.* at 447 (citation omitted).

[6]*Id.* at 445.

sue.'"[7] The issue of the parties' intent is sufficiently presented such that the court's legal conclusion cannot be sustained. The court's order granting summary judgment is reversed, and the case is remanded.

■ The trial court's order in the unlawful detainer action and writ of restitution are also reversed and remanded until a finding of ownership in the quiet title action is reached. The purpose of an action for unlawful detainer is to determine who has the right of possession.[8] The trial court necessarily used its finding of ownership in the quiet title action in reaching its conclusion in the unlawful detainer action. As issues of ownership in the quiet title action still remain unresolved, the finding in the unlawful detainer action and the grant of the writ of restitution are premature.

AGID and ELLINGTON, JJ., concur.

---

[7]*McConiga v. Riches*, 40 Wn. App. 532, 536, 700 P.2d 331 (1985).

[8]*First Union Management, Inc. v. Slack*, 36 Wn. App. 849, 854, 679 P.2d 936 (1984).