236 P.3d 991 (2010)
Colleen SMITH, Appellant,
v.
Theresa MONSON, a widowed woman, Ronald R. Mason and Theresa E. Mason, husband and wife, Respondents.
No. 28561-8-III.
Court of Appeals of Washington, Division 3.
August 12, 2010.
*992 Robert E. Lawrence-Berrey, Jr., Attorney at Law, Yakima, WA, for Petitioner.
Carter Lynn Fjeld, Velikanje Halverson PC, Yakima, WA, for Respondents.
SWEENEY, J.
¶ 1 Standing to assert a claim in equity resides in the party entitled to equitable relief; it is not dependent on the legal relationship of those parties. Here, the plaintiff conveyed property to a relative so that relative could borrow money for the plaintiff to buy a mobile home. The bank would not loan the plaintiff the money. The plaintiff paid off the loan but the relative conveyed the property by quitclaim deed to other family members, ostensibly so they would have "access" to the property. The court concluded that the plaintiff did not have standing to challenge the conveyance and dismissed her claims. We conclude this was error and reverse and remand.

FACTS
¶ 2 Ed and Colleen Smith owned property known as 548 Woodland Road, Goldendale, Washington. They wanted to buy and place a mobile home on the property, but the bank would not loan them money to buy the home. Ms. Smith's aunt and uncle, Arnold and Theresa Monson, agreed to obtain a loan to buy the mobile home if the Smiths conveyed the Woodland property to them. They also agreed to convey the Woodland property back to the Smiths once the Smiths repaid the loan.
¶ 3 The Smiths conveyed the Woodland property to the Monsons on February 20, 2004. The Monsons then obtained a loan to buy the mobile home. And the Smiths repaid the loan in full. Mr. Monson died in May 2005. Ms. Monson, nevertheless, intended to convey the property back to Ms. Smith. But, instead, Ms. Monson signed a quitclaim deed, giving the Woodland property to Ms. Smith's sister and brother-in-law, Theresa and Ronald Mason. The deed was recorded on June 29, 2006. Ms. Monson did not realize she conveyed the Woodland property to the Masons. She thought she was only granting them access to the property by the deed.
¶ 4 Ms. Smith wanted title to the Woodland property. So she used her power of attorney (as Monsons' attorney-in-fact) to execute and record a quitclaim deed, conveying the Woodland property from the Monsons to herself for "love and affection," on July 3, 2006. The deed lacked a legal description. Ms. Smith then filed a complaint to set aside the Monson-Mason deed and to quiet title. She asserted that her aunt breached their oral contract and that her sister and brother-in-law defrauded their aunt. The Masons answered and then moved for summary judgment. Ms. Monson never appeared in the action and died before the summary judgment hearing.
¶ 5 A trial judge pro tempore heard the summary judgment arguments. He found an issue of fact only as to whether the Masons defrauded Ms. Monson. But he dismissed the claim sua sponte on the ground that Ms. Smith was not the real party in interest.

DISCUSSION

AUTHORITY OF A JUDGE PRO TEMPOREJURISDICTION
¶ 6 Ms. Smith first contends that the judge pro tempore lacked jurisdiction to hear this case because the parties did not stipulate to his appointment orally or in writing. She argues that a judge pro tempore's power is based upon the consent of the parties to his appointment. State v. Sain, 34 Wash.App. 553, 556, 663 P.2d 493 (1983).
¶ 7 The authority of the trial judge is a question of law that we will review de novo. In re Marriage of Barrett-Smith, 110 Wash. App. 87, 90, 38 P.3d 1030 (2002) (the court reviews de novo without stating a standard of review). And, of course, lack of jurisdiction can be asserted anytime. Bour v. Johnson, 80 Wash.App. 643, 646-47, 910 P.2d 548 (1996).
*993 ¶ 8 Ms. Smith contends that the trial court judge pro tempore lacked jurisdiction to hear this matter because the parties did not consent to his appointment.
¶ 9 Washington Constitution article IV, section 7, and RCW 2.08.180 authorize the appointment of any sitting elected judge and of other members of the bar as judges pro tempore in superior court. A member of the bar can be appointed only upon the parties' consent, the court's approval, and the member's oath to try the case. RCW 2.08.180. An elected sitting judge, however, may serve as an elected judge pro tempore without the consent of the parties or their attorneys. AR 6(b).
¶ 10 Here, the judge pro tempore, Robert Weisfield, is and was an elected sitting judge in Klickitat District Court West. The parties' consent, then, was not required for his appointment. AR 6(b). Judge Weisfield had jurisdiction to try this case even without their consent.

STANDING TO ASSERT EQUITABLE CLAIMS
¶ 11 The next question is whether Ms. Smith had standing to sue to set aside the Monson-Mason quitclaim deed. Phillips v. Blaser is instructive. 13 Wash.2d 439, 125 P.2d 291 (1942). Andrew Phillips owned property that was to be sold at auction for tax delinquency unless he paid the county about $300. Id. at 440, 125 P.2d 291. Louise Blaser, an acquaintance, agreed to loan Mr. Phillips the $300. Id. at 441, 125 P.2d 291. Mr. Phillips quitclaimed his property to Ms. Blaser for $1. Id. Contemporaneously, the two signed an agreement that Ms. Blaser would sell the property back to Mr. Phillips for about $600. Id. Ms. Blaser later sold the property to E.A. Edwards for $4,000. Id. at 443, 125 P.2d 291. Ms. Blaser and Mr. Edwards were fully aware of Mr. Phillips's interest in and continued possession and use of the land. Id. at 444, 125 P.2d 291.
¶ 12 Mr. Phillips sued Ms. Blaser and Mr. Edwards to have his quitclaim deed and the Phillips-Blaser contract construed as a mortgage and his title to the land quieted. Id. Our state supreme court affirmed the trial court's finding "that the original transaction was an arrangement to secure repayment of money borrowed instead of a sale, that the subsequent purchaser (Edwards) from the equitable mortgagee (Blaser) was not a purchaser in good faith." Id. at 448, 125 P.2d 291. The decision was based on the rule that:
"[W]here there is a deed absolute in form, either with or without a contemporaneous agreement for a resale of the property, there being nothing upon the face of the collateral papers to show a contrary intent, the presumption of law, independent of evidence, is that the transaction is what it appears to be, and that he who asserts the writing should be given a different construction, must show, by clear and convincing evidence, that a mortgage and not a sale with the right to repurchase was intended."
Id. at 447, 125 P.2d 291 (emphasis omitted) (internal quotation marks omitted) (quoting Hoover v. Bouffleur, 74 Wash. 382, 386, 133 P. 602 (1913)). The rule does not require that the intent of the parties appear upon the face of the collateral paper, but such intent may be gathered from the circumstances. Id. at 447-48, 125 P.2d 291.
¶ 13 Like Mr. Phillips, Ms. Smith's essential claim is that her transaction with Ms. Monson was an equitable mortgage. And, therefore, Ms. Monson could not convey that property to the Masons because she had an equitable duty to convey it back to the Smiths once they paid off the mobile home loan. Accordingly, she asked to quiet the Masons' claim to her title in the property. Her claimed interest in the property gives her standing to maintain this action. Id. at 447, 125 P.2d 291. Ultimately, this is an action in equity. Fleishbein v. Thorne, 193 Wash. 65, 72-73, 74 P.2d 880 (1937); Bates v. Glaser, 130 Wash. 328, 329, 227 P. 15 (1924). And so standing follows the right to assert the equitable claim. Vasquez v. Hawthorne, 145 Wash.2d 103, 107, 33 P.3d 735 (2001).
¶ 14 The trial court erred by dismissing Ms. Smith's action against the Masons. We reverse and remand for further proceedings.
WE CONCUR: KORSMO, A.C.J., and BROWN, J.