FILED
COURT OF APPEALS
DIVISION II

2013 SEP 17 AM 9:29

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOY E. FIX, a widow, | No. 43504-7-II |
| Appellant, | |
| v. | |
| MICHAEL FIX and MARCIA FIX, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, C.J. — Joy Fix, the appellant and mother of respondent Michael Fix, sued

her son to quiet title in property she alleged belonged to her. Joy alleged that Michael[1]

wrongfully obtained title to the property through trickery and asked that the court impose a

constructive trust in her favor. The court dismissed the case on Michael's motion for summary

judgment and awarded him attorney fees. Because issues of material fact exist as to Joy's

claims, we reverse summary judgment, vacate the award of attorney fees and costs, and remand.

## FACTS

In 1985, Louis and Joy Fix sold seven and a half acres of real estate located in Roy,

Washington, to their son, Clifford, and his spouse, Laurel. The property was conveyed to

Clifford and Laurel through a deed of trust with an obligation under a note to pay $35,000. That

same year, Clifford and Laurel's marriage faltered, and they later divorced and moved off the

property. Clifford and Laurel did not make any payments on the $35,000 note. In a letter dated

---

[1] Because members of the Fix family share the same last name, we refer to them by their first names for clarity, intending no disrespect.

June 13, 1987, Clifford and Laurel stated that they had voluntarily relinquished all interest and claims on the property. The letter states that they had not made any payments since August 1985 and never paid any of the property taxes.

In 1985, shortly after Clifford and Laurel left, Michael Fix moved onto the property. Michael is Clifford's brother and the son of Louis and Joy. Michael paid property taxes on the property and worked for his father once a week, but paid no rent. He has had continuous possession of the property since 1985.

Joy believed that after Clifford and Laurel signed the relinquishment in 1987, she and her husband owned the property. Consistent with this belief, Louis and Joy attempted to place the property into a living trust through a quitclaim deed in 1990. Michael also had repeated discussions with his parents about buying the property from them over the years following his move onto the property.

At some point, it is not clear exactly when, Michael, Louis, and Joy learned that title problems existed and that title to the property remained in Clifford's and Laurel's names. They began trying to "clear title" to the property. In November 2006, Clifford signed a quitclaim deed granting the property to his brother, Michael. According to Paula MacLachlan, Michael's sister and witness to this deed, this deed's purpose was to "clear title" to the property. For reasons that are unclear, this deed was not filed.

Louis contacted attorney Craig Powers about selling the property to Michael in March 2008. Powers obtained a title report showing that title to the property was still in the names of Clifford and Laurel. Powers stated that Joy and Louis planned to sell the property to Michael for $135,000 with no money down and six percent interest to be paid over 20 years. Before

completing the sale, Louis died in 2008. Michael called Powers, stating that his father had died and that his mother "did not want to deal with it anymore." Clerk's Papers (CP) at 62. Michael represented that Joy wanted the deeds for Clifford and Laurel to be conveyed to him and to forget the sale.

Michael contacted Laurel, who was living in New Jersey. On May 12, 2009, she signed a quitclaim deed to Michael for whatever interest she had in the property. Michael also contacted Clifford, who was living in Wales, Great Britain. Clifford signed a quitclaim deed conveying the property to Michael on May 30, 2009.

According to Clifford, the purpose of him signing the deed was to clear title on the property so that it could be sold, not to actually transfer any ownership interest, which he believed he and Laurel had relinquished in 1987:

> I was contacted by Michael as he reputed on behalf of my mother to clear title to the 7 [and] 1/2 acres in Roy that my ex-wife and I had purchased in 1986 from my parents. He sent me a deed for my signature which I questioned but trusted him and signed.
> I found out later that he had used my deed and my ex-wife's to gain title to the property.
> My ex-wife, Laural, [sic] and I relinquished any interest in the property by the relinquishment signed in June 13, 1987. We have not claimed to have any interest in the property since. The deed was supposed to clear record title so it could be sold, not to actually transfer any ownership interest to Michael.

CP at 159-60.

Joy became very upset after Michael told her that the deeds had been filed in his name. Joy denied that she wanted the property deeded to Michael without a purchase agreement. She stated that she wanted clear title in order to sell the property to Michael. She stated that Michael had led her to believe that he was acting as her agent; she did not suspect Michael's plan to get title to the property in his name without purchase.

3

Joy sued Michael and his wife in an action entitled "Complaint to Establish Constructive Trust and Quiet Title and Waste" in March 2011. The first count alleged that "the defendants through trickery obtained quitclaim deeds wrongfully obtaining title to the property" and "continue to hold title to said property properly belonging to the plaintiff." CP at 1-2. Count two alleged waste. Among the requested relief, the complaint asked for a declaration that the defendants hold the property in trust for the plaintiff and to quiet title to the property in the plaintiff.

Both Michael and Joy moved for summary judgment in January 2012. Michael contended that Joy lacked standing to sue Michael and that Joy could not establish "trickery" or fraud. The trial court denied both motions for summary judgment.

Michael moved for reconsideration. In the motion, he argued that Joy's pleading of "trickery" was improper because she had not pleaded the nine elements of fraud or provided specific examples of each element. He argued that CR 9(b) required dismissal when a complaint fails to plead fraud with particularity.

The court entered an order on the motion in March 2012. Among other things, the order states that Joy was free to amend her complaint and plead fraud. The order further states that if fraud is alleged, Joy must follow the court rules and set forth the facts in the cause of action.

Joy filed an amended complaint alleging in count one that "defendants through DECEIT and or FRAUD obtained quitclaim deeds wrongfully obtaining title to the property" and "continue to hold title to said property properly belonging to the plaintiff." CP at 139-40. Count one further set out the nine elements of fraud with factual allegations:

1.      [Defendants] [r]epresented to plaintiff that they were getting deeds to clear title to the property from plaintiff's son and former wife.

4

2. Plaintiff was relying on defendants to assist her in clearing title.
3. Defendants were in fact attempting to and did obtain deeds from plaintiff's son and former wife.
4. Defendants knew their statements were false.
5. Defendants knew the plaintiff was depending on them to help her get clear title.
6. Plaintiff was unaware that defendants were attempting and did obtain deeds to the property.
7. Plaintiff relied on the defendants['] representations that they were clearing title in the property to the plaintiff.
8. Plaintiff had a right to rely on her son's representations as a trusted son.
9. Plaintiff has lost title to property valued in excess of $100,000.

CP at 140.

Michael renewed his motion for summary judgment in April 2012. He again argued that Joy failed to plead fraud with sufficient particularity and that Joy lacked standing. The trial court granted Michael's motion.

Michael moved for attorney fees and costs, arguing, inter alia, that Joy's lawsuit was frivolous. The trial court granted the request in the amount of $10,700. The court entered findings of fact and conclusions of law in support of the attorney fee award. In a finding of fact explaining the reason for the award, the court stated that "the basis for the summary judgment" was that the amended complaint did not clearly state a cause of action or the basis by which the Plaintiffs would have standing:

> The Court does not find the purpose of the lawsuit to be either "frivolous" or "advanced without reasonable cause" since clearing title to property is not viewed as an improper subject of a lawsuit. However, *the Court does find that after allowing the Plaintiffs to amend their complaint to plead a more specific cause of action, other than "trickery" in the transfer of title,* [sic] *but the amended complaint filed thereafter did not clearly state a cause of action or the basis by which the Plaintiffs would have standing to proceed with such a case. Thus, the basis for the summary judgment the Court granted.* The Court believes that some award of attorney's fees is warranted based on the equitable grounds granted by the Court under the above statute. Given the opportunity to state a valid cause of action, on two different occasions, by the Court allowing the Plaintiff to amend

the complaint, and the fact there was really no substantial change from the original complaint. The Court, however, does not find that this suit was brought in bad faith and would not award the full amount of attorney's fees under this particular provision.

CP at 234-35 (emphasis added).

Joy appeals both the grant of summary judgment and the award of attorney fees.

ANALYSIS

I. SUMMARY JUDGMENT

A.    *Summary Judgment Standard*

Summary judgment should be granted when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *City of Lakewood v. Pierce County*, 144 Wn.2d 118, 125, 30 P.3d 446 (2001); CR 56(c). The moving party bears the burden of demonstrating that no genuine dispute exists as to any material fact. *City of Lakewood*, 144 Wn.2d at 125. All facts and reasonable inferences are considered in a light most favorable to the nonmoving party. *City of Lakewood*, 144 Wn.2d at 125. We review summary judgment orders de novo, engaging in the same inquiry as the trial court. *Sheikh v. Choe*, 156 Wn.2d 441, 447 128 P.3d 574 (2006).[2]

B.    *Standing and Real Party In Interest*

Michael argues that we should affirm summary judgment because Joy lacks "standing" and is not a "real party in interest" as defined by CR 17(a). We disagree.

_____

[2] Michael complains that Joy has not assigned error to any of the trial court's "findings." But the court did not enter findings of fact on summary judgment. Moreover, if the court had entered findings on summary judgment, they would have been superfluous and inconsequential on appeal. *Chelan County Deputy Sheriffs' Ass'n v. Chelan County*, 109 Wn.2d 282, 294 n.6, 745 P.2d 1 (1987). The reference to Joy's standing in the trial court's findings on attorney fees is an unsupported conclusion of law.

1. *Standing*

Michael represents that the "trial court expressly found Petitioner lacked standing to quiet title in the subject property in her own name." Br. of Resp't at 3. Michael does not support this assertion with a citation to the record.[3] "The doctrine of standing requires that a plaintiff must have a personal stake in the outcome of the case in order to bring suit." *Gustafson v. Gustafson*, 47 Wn. App. 272, 276, 734 P.2d 949 (1987). Michael argues Joy does not have a personal stake in this case because the statute of limitations bars her claim to the property.

A six-year statute of limitations applies to actions arising out of written contracts. RCW 4.16.040. In an action to foreclose on a mortgage or deed of trust, RCW 7.28.300 makes the statute of limitations a defense. *Walcker v. Benson and McLaughlin, P.S.*, 79 Wn. App. 739, 746, 904 P.2d 1176 (1995). Michael argues that Joy should have sought to foreclose on Clifford and Laurel when they did not make payments on the note. He asserts that the statute of limitations ran in 1991. He asserts that when the statute ran, Joy's interest in the property vanished, and the property passed to Clifford, who could dispose of the property in any manner without recourse for Joy.

This argument misconstrues the law. Statutes of limitations, as opposed to nonclaim statutes, do not void interests. *Jordan v. Bergsma*, 63 Wn. App. 825, 828, 822 P.2d 319 (1992). Thus, "a statute of limitation does not *invalidate* a claim, but rather 'deprives a plaintiff of the opportunity to invoke the power of the courts in support of an otherwise valid claim.'" *Walcker*, 79 Wn. App. at 743 (quoting *Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 714, 709

---

[3] It is likely that Michael is referring to the court's explanation for the award of attorney fees, which, as quoted above, says "the amended complaint filed thereafter did not clearly state a cause of action or the basis by which the Plaintiffs would have *standing* to proceed with such a case." CP at 234-35 (emphasis added).

P.2d 793 (1985)). Upon the expiration of the contract's statute of limitation, a deed of trust securing an obligation is voidable, not void. *Bergsma*, 63 Wn. App. at 828. The statute of limitations is an affirmative defense that the defendant must assert or else it is waived. *Alexander v. Food Services of America, Inc.*, 76 Wn. App. 425, 428-29, 886 P.2d 231 (1994). It is not self-executing. *Alexander*, 76 Wn. App. at 428-29. Thus, assuming that the statute of limitations applies to Joy's claims, any interest Joy had in the property did not automatically become invalid once the statute of limitations ran.

Michael's argument is also flawed in an additional respect. In arguing that the statute of limitations deprived Joy of standing, Michael incorrectly presumes that Joy sought title through the deed of trust and note. But as both the original and amended complaints show, Joy sought to quiet title through a constructive trust theory, an equitable remedy. "A constructive trust is an equitable remedy which arises when the person holding title to property has an equitable duty to convey it to another on the grounds that they would be unjustly enriched if permitted to retain it." *City of Lakewood*, 144 Wn.2d at 126. A court may impose constructive trusts not only in cases of fraud, misrepresentation, or bad faith, but also in circumstances not amounting to fraud or undue influence. *Baker v. Leonard*, 120 Wn.2d 538, 547, 843 P.2d 1050 (1993). As recognized by our Supreme Court:

> If one party obtains the legal title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.

8

*Kausky v. Kosten*, 27 Wn.2d 721, 728, 179 P.2d 950 (1947) (quoting 1 JOHN NEWTON POMEROY, A TREATISE ON EQUITY JURISPRUDENCE § 155, at 210 (Spencer W. Symons ed., 5th ed. 1941). Constructive trusts may arise even if property is not acquired wrongfully because the concern is whether the enrichment is unjust. *See Brooke v. Robinson*, 125 Wn. App. 253, 257, 104 P.3d 674 (2004). Here, a constructive trust in Joy's favor arguably arose when Joy discovered that Michael had obtained title to the property through quitclaim deeds from Clifford and Laurel. Joy sued in 2011, about two years after she learned that Michael gained title to the property. An action based on a constructive trust is subject to a three-year statute of limitations. RCW 4.16.080; *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995). Thus, her action for constructive trust is timely. *See Goodman*, 128 Wn.2d at 373 n.2 ("The statute of limitations begins to run on a constructive trust when the beneficiary discovers or should have discovered the wrongful act which gave rise to the constructive trust.").[4]

That Joy does not hold legal title to the property does not mean that she lacks standing to assert an equitable claim to the property. "Standing to assert a claim in equity resides in the party entitled to equitable relief; it is not dependent on the legal relationship of those parties." *Smith v. Monson*, 157 Wn. App. 443, 445, 236 P.3d 991 (2010). Accordingly, in *Monson* this court held that the plaintiff had standing to sue to quiet title under an equitable mortgage theory.

---

[4] Even assuming that the statute of limitations ran in this case because Joy did not sue Clifford and Laurel, the doctrine of equitable estoppel may preclude the defense. *See Peterson v. Groves*, 111 Wn. App. 306, 310-11, 44 P.3d 984 (2002). The elements of equitable estoppel are: "(1) an admission, statement, or act inconsistent with a claim afterward asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission." *Peterson*, 111 Wn. App. at 310. Joy raised equitable estoppel in response below to Michael's standing argument and has presented evidence raising issues of material fact on each element.

157 Wn. App. at 445, 448-49. There, the plaintiff had conveyed property to a relative in order that the relative could borrow money for the plaintiff. 157 Wn. App. at 445. Rather than conveying the property back to the plaintiff, the relative conveyed the property to family members. 157 Wn. App. at 445. This court held that the plaintiff's action was one in equity and the plaintiff had standing to assert her equitable claim to the property against the relative and the relative's family members. 157 Wn. App. at 448-49. Here, Joy similarly has standing to assert her equitable claim to the property.

Joy presented adequate evidence raising issues of material fact as to her constructive trust theory and quiet title action. Joy provided evidence that Clifford and Laurel relinquished any interest they had in the property. This shows that they had nothing to pass on to Michael. Alternatively, their relinquishment would arguably preclude either one from claiming an interest in the property. Evidence also shows that all the parties, Michael included, regarded Joy and her late husband as the owners of the property. Michael repeatedly entered into talks with his parents to buy the property. Evidence further tends to show that the purpose of the quitclaim deeds from Clifford and Laurel were to clear title to the property so that Michael could purchase it. Joy believed that Michael was acting as her agent. We conclude that this evidence raised material issues of fact, precluding summary judgment.

2. *Real Party In Interest*

Similar to his argument on standing, Michael argues that Joy is not a "real party in interest" as defined by CR 17(a). Br. of Resp't at 16. Under that rule, "[e]very action shall be prosecuted in the name of the real party in interest." CR 17(a). Michael also contends that Joy does not have a "valid subsisting interest" in the real property and, thus, cannot maintain an

action to quiet title under RCW 7.28.010.[5] Br. of Resp't at 15-16. Michael bases these arguments on the same flawed understanding of the statute of limitations. As we discussed above, the statute of limitations did not void Joy's interest in the property and Joy asserts an equitable theory of ownership. Nonetheless, Michael argues that *Magart v. Fierce*, 35 Wn. App. 264, 266, 666 P.2d 386 (1983) directly applies to the case and shows that Joy lacks standing and is not a real party in interest. Michael's reliance on *Magart* is misplaced. *Magart* did not involve a claim of equitable trust, nor did the plaintiff in *Magart* claim an interest through an equitable theory. In addition, a third party owned the property at issue. Here, no evidence shows that a third party actually owns the property at issue. *Magart* does not support Michael's arguments.

We reject Michael's argument that Joy lacks standing.

## C. *Adequacy of Joy's Pleadings*

Michael also argued to the trial court that summary judgment was proper because Joy did not adequately plead a valid cause of action. Ignoring that Joy had asked to quiet title through a constructive trust theory, Michael argued that "trickery" was not a cause of action and that Joy was actually pleading a cause of action for fraud, which she had not pleaded with sufficient

---

[5] Under this statute, a person having a "valid subsisting interest in real property" and a "right [of] possession" may bring an action to recover the property:

> Any person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title.

RCW 7.28.010.

particularity.[6] This was despite the fact that Joy had not pleaded fraud in her original complaint. After Joy amended her complaint, deleting the word trickery and replacing it with an allegation of "deceit" or "fraud," Michael renewed his argument in his second motion for summary judgment.

Although Michael has abandoned this argument on appeal, the trial court's statements from the award of attorney fees suggest that the court may have granted summary judgment on this ground. There, the court stated that the "primary cause of action . . . was an allegation o[f] fraud or trickery with regard to a subsequent transfer between the Defendants, Michael Fix and Marcia Fix, husband and wife, and his brother, Clifford M. Fix and Laurel J. Fix, husband and wife." CP at 233-34. The court went on to say that the amended complaint "did not clearly state a cause of action" and that Joy had been given "the opportunity to state a valid cause of action, on two different occasions." CP at 235. Thus, we address the issue despite Michael's abandonment of the argument.

"Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought." *Pacific Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006); CR 8(a). Joy's pleading met this standard. The focus below on Joy's use of the word "trickery" in her original complaint ignored this standard. Given the name of the complaint ("Complaint to Establish Constructive Trust and Quiet Title"), the allegation that the property belonged to Joy, and the relief sought (constructive trust and quiet title), the reasonable conclusion is that Joy sought to quiet title through a constructive trust

---

[6] Under court rule, "the circumstances constituting fraud . . . shall be stated with particularity." CR 9(b).

theory. Joy did not sue for mere "trickery." Neither did Joy seek damages for the tort of fraud. While Joy later amended her complaint to incorporate an allegation of fraud into her count seeking a constructive trust, the gravamen of her complaint remained one seeking title to the property.

An opinion from our Supreme Court, *Viewcrest Cooperative Association, Inc. v. Deer*, supports this analysis. 70 Wn.2d 290, 422 P.2d 832 (1967). There, the trial court had imposed a constructive trust and entered a finding that the defendant had perpetrated a fraud upon the plaintiff. *Viewcrest*, 70 Wn.2d at 292-93. On appeal, the defendant argued that the trial court could not make a finding of "fraud" because the plaintiff had failed to allege fraud with particularity. *Viewcrest*, 70 Wn.2d at 293. Our Supreme Court rejected this argument. *Viewcrest*, 70 Wn.2d at 293. The court stated it "is not required, in order to impose a constructive trust, that the plaintiff must prove that he was deprived of his property through acts constituting actionable fraud." *Viewcrest*, 70 Wn.2d at 293. The court held that it was "patently obvious" that the trial court had used the word "fraud" in "its broadest sense, as meaning inequitable or unconscionable conduct." *Viewcrest*, 70 Wn.2d at 294.

Similarly, we construe Joy's use of the words "trickery," "deceit," and "fraud" in the broadest sense, given the request for constructive trust and quiet title. Thus, it was improper to transform Joy's claim for constructive trust into a claim for fraud and require particularity under CR 9(b). We hold that Joy's claims were adequately pleaded.

We reverse summary judgment.

13

## II. The Trial Court's Award of Attorney Fees

Joy challenges the trial court's award of $10,700 in attorney fees and costs to Michael. We review an award of attorney fees for an abuse of discretion. *Greenbank Beach and Boat Club, Inc. v. Bunney*, 168 Wn. App. 517, 524, 280 P.3d 1133, *review denied*, 175 Wn.2d 1028 (2012).

The trial court awarded fees based on RCW 4.84.185. Under that statute, if an action is "frivolous and advanced without reasonable cause," the court may order the nonprevailing party to pay the prevailing party's incurred expenses, including attorney fees. RCW 4.84.185. The trial court found this statute gave it "equitable grounds" to award fees because while Joy's lawsuit was not frivolous or brought in bad faith, she failed to plead an adequate cause of action despite being given an opportunity to do so and she failed to provide a basis for her standing.

RCW 4.84.185 allows a trial court to award the prevailing party reasonable expenses, including attorney fees, incurred in opposing a frivolous action. Because we hold Joy's pleadings adequate and reverse the grant of summary judgment, Michael is not a prevailing party. Because we hold material facts exist to defeat summary judgment, Joy's action is not frivolous. Accordingly, we vacate the award for attorney fees.

## III. Attorney Fees on Appeal

Citing RAP 18.9, Michael asks for attorney fees on appeal, contending that Joy's appeal is frivolous. Because Joy's appeal is not frivolous, we deny Michael's request.

No. 43504-7-II

We reverse summary judgment, vacate the award for attorney fees and costs, and remand for trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, C.J.

We concur:

_____
Johanson, J.

_____
Penoyar, J.